BRICKFIELD & DONAHUE
PAUL B. BRICKFIELD
70 Grand Avenue, Suite 102
River Edge, NJ 07661
Telephone:  (201) 488-7707
Fax: (201) 488-9559

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of KID BRANDS, INC., ) ) ) | No. |
| Plaintiff, ) | VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS MISMANAGEMENT, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT |
| vs. ) | |
| BRUCE G. CRAIN, MARC S. GOLDFARB, GUY A. PAGLINCO, RAPHAEL BENAROYA, MARIO CIAMPI, FREDERICK J. HOROWITZ, HUGH R. ROVIT, SALVATORE M. SALIBELLO, JOHN SCHAEFER and MICHAEL ZIMMERMAN, ) ) ) ) ) ) | |
| Defendants, ) | |
| – and – ) | |
| KID BRANDS, INC., a New Jersey corporation, ) ) | |
| Nominal Defendant. ) | DEMAND FOR JURY TRIAL |

*The Board's investigation found instances at LaJobi in which incorrect import duties were applied on certain wooden furniture imported from vendors in the PRC, resulting in a violation of anti-dumping regulations.*

\* \* \*

*[T]he Company has determined that the Company incorrectly described certain payments as being made by LaJobi entirely to L&J Industries (a company established by Lawrence Bivona, the former President of LaJobi, and various members of his family, to provide quality control, compliance and other services to LaJobi for goods shipped from Asian ports) in its quarterly reports during 2010.*

\* \* \*

*The Company believes that the payment and other practices with respect to quality control, compliance and certain other services in Hong Kong, China, Vietnam and Thailand violated civil laws and potentially violated criminal laws in these jurisdictions . . . .*

Kid Brands, Inc. 2010 Annual Report, dated March 31, 2011.

## INTRODUCTION

1.      This is a shareholder derivative action brought by the City of Roseville Employees' Retirement System, located at 2977 Gratiot, Roseville, Michigan, on behalf of Kid Brands, Inc. ("KBI" or the "Company") against its entire board of directors and certain top officers for breach of fiduciary duty, abuse of control, gross mismanagement, and unjust enrichment.  KBI, through its LaJobi, Inc. ("LaJobi") subsidiary, sells cribs, mattresses and nursery furniture which are imported from China, Hong Kong, Vietnam and Thailand.

2.      On March 15, 2011, KBI shareholders learned for the first time that KBI had violated the U.S. anti-dumping laws by underpaying the customs duties due on

products imported into the United States by LaJobi.  According to the Company's SEC Form 8-K, there were "instances at LaJobi in which incorrect import duties were applied on certain wooden furniture imported from vendors in China, resulting in a violation of anti-dumping regulations."  On this news, the trading price of KBI stock instantly collapsed, wiping out millions in shareholder equity.

3.    Then, just as KBI shareholders were digesting this adverse development, on March 31, 2011, defendants stunned KBI shareholders again by revealing that KBI owes approximately $7 million in customs duty to U.S. Customs and Border Protection ("U.S. Customs"), and could face a penalty of up to 100% customs duty. The Company also warned that "[a]ny amounts owed in excess of the accrual recorded for the fourth quarter and full year ended December 31, 2010 will adversely affect our gross margin and net income for the period(s) in which such amounts may be recorded and could have a material adverse affect [sic] on our results of operations."

4.    Nevertheless, the KBI Board has not commenced legal action against defendants, and will not because they are personally interested in the outcome of this litigation.  By this action, plaintiff seeks to vindicate KBI's rights against its wayward fiduciaries.

### JURISDICTION AND VENUE

5.    This Court has jurisdiction over all claims under 28 U.S.C. §1332(b)(1) in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

7.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this district, or is an individual who has sufficient minimum contacts with this judicial district so as to render the exercise of jurisdiction by the courts of this district permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this Court under 28 U.S.C. §1391(a) because: (i) KBI is incorporated and maintains its principal place of business in this district; (ii) one or more of the defendants either resides in or maintains executive offices in this district; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to KBI, occurred in this district; and (iv) defendants have received substantial compensation in this district by doing business here and engaging in numerous activities that had an effect in this district.

**PARTIES**

9.     Plaintiff City of Roseville Employees' Retirement System is and has been a shareholder of KBI continuously since April 2010.  Plaintiff will adequately and fairly represent the interests of KBI and its shareholders in enforcing and prosecuting its rights.  Plaintiff is a citizen of the State of Michigan.

- 3 -

10.    Nominal defendant KBI is a New Jersey corporation with its principal executive offices located at One Meadowlands Plaza, 8th Floor, East Rutherford, New Jersey 07073.  KBI designs, imports, markets and distributes branded infant and children's consumer products.  KBI is a citizen of the State of New Jersey.

11.    Defendant Bruce G. Crain ("Crain") has been President, Chief Executive Officer and a director of KBI since 2007.  Due to KBI's extensive import operations, defendant Crain knew, at all relevant times, that KBI was subject to U.S. Customs rules and regulations and anti-dumping laws.  Crain also knew that, under U.S. Customs rules and regulations, KBI needed to pay customs duties on goods imported from China and elsewhere.  Defendant Crain also knew, at all relevant times, that KBI needed to implement an internal controls system to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates.  Directors and officers of New Jersey corporations are generally presumed to know that they have a duty to operate the corporation lawfully and in accordance with the statutory laws applicable to its business.  Therefore, defendant Crain owed KBI a duty of loyalty to implement controls for compliance with U.S. Customs laws for goods imported from overseas.  But Crain did not, and KBI substantially underpaid customs duties on goods imported by LaJobi into the United States.  Defendant Crain also made false statements, or caused false statements to be made, about KBI's related-party transactions with the former owners of the LaJobi subsidiary in KBI's 2010 SEC Forms 10-K and 10-Q.

- 4 -

By signing KBI's 2010 Annual Report on SEC Form 10-K and approving KBI's first through third quarter 2010 Quarterly Reports on SEC Form 10-Q, defendant Crain breached his fiduciary duty of loyalty (and candor and good faith) and violated the federal securities laws by making false and misleading statements to KBI shareholders. Crain is a citizen of the State of New York.

12.     Defendant Marc S. Goldfarb ("Goldfarb") has been Senior Vice President General Counsel and Corporate Secretary of KBI since 2005. Due to KBI's extensive import operations, defendant Goldfarb knew, at all relevant times, that KBI was subject to U.S. Customs rules and regulations and anti-dumping laws. Goldfarb also knew that, under the U.S. Customs rules and regulations, KBI needed to pay customs duties on goods imported from China and elsewhere. Defendant Goldfarb also knew, at all relevant times, that KBI needed to implement an internal controls system to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates. Directors and officers of New Jersey corporations are generally presumed to know that they have a duty to operate the corporation lawfully and in accordance with the statutory laws applicable to its business. Therefore, defendant Goldfarb owed KBI a duty of loyalty to implement controls for compliance with U.S. Customs laws for goods imported from overseas. But Goldfarb did not, and KBI substantially underpaid customs duties on goods imported by LaJobi into the United States. Defendant Goldfarb also made false statements, or caused false statements to

be made, about KBI's related-party transactions with the former owners of the LaJobi subsidiary in KBI's 2010 SEC Forms 10-K and 10-Q. Goldfarb is a citizen of the State of New Jersey.

13.    Defendant Guy A. Paglinco ("Paglinco") has been Vice President – Corporate Controller of KBI since 2006 and was promoted to Vice President and Chief Accounting Officer of KBI as of November 13, 2007, Interim Chief Financial Officer as of January 30, 2009, and Chief Financial Officer as of August 14, 2009. Due to KBI's extensive import operations, defendant Paglinco knew, at all relevant times, that KBI was subject to U.S. Customs rules and regulations and anti-dumping laws. Paglinco also knew that, under U.S. Customs rules and regulations, KBI needed to pay customs duties on goods imported from China and elsewhere. Defendant Paglinco also knew, at all relevant times, that KBI needed to implement an internal controls system to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates. Directors and officers of New Jersey corporations are generally presumed to know that they have a duty to operate the corporation lawfully and in accordance with the statutory laws applicable to its business. Therefore, defendant Paglinco owed KBI a duty of loyalty to implement controls for compliance with U.S. Customs laws for goods imported from overseas. But Paglinco did not, and KBI substantially underpaid customs duties on goods imported by LaJobi into the United States. Defendant Paglinco also made false statements, or caused false

statements to be made, about KBI's related-party transactions with the former owners of the LaJobi subsidiary in KBI's 2010 SEC Forms 10-K and 10-Q. By signing KBI's 2010 Annual Report on SEC Form 10-K and KBI's first through third quarter 2010 Quarterly Reports on SEC Form 10-Q, defendant Paglinco breached his fiduciary duty of loyalty (and candor and good faith) and violated the federal securities laws by making false and misleading statements to KBI shareholders. Paglinco is a citizen of the State of New Jersey.

14.    Defendant Raphael Benaroya ("Benaroya") has been a director of KBI since 1993. Due to KBI's extensive import operations, defendant Benaroya knew, at all relevant times, that KBI was subject to U.S. Customs rules and regulations and anti-dumping laws.  Benaroya also knew that, under U.S. Customs rules and regulations, KBI needed to pay customs duties on goods imported from China and elsewhere. Defendant Benaroya also knew, at all relevant times, that KBI needed to implement an internal controls system to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates.  Directors of New Jersey corporations are generally presumed to know that they have a duty to operate the corporation lawfully and in accordance with the statutory laws applicable to its business. Therefore, defendant Benaroya owed KBI a duty of loyalty to implement controls for compliance with U.S. Customs laws for goods imported from overseas. But Benaroya did not, and KBI substantially underpaid customs duties on goods

imported by LaJobi into the United States.  Defendant Benaroya also made false statements, or caused false statements to be made, about KBI's related-party transactions with the former owners of the LaJobi subsidiary in KBI's 2010 SEC Forms 10-K and 10-Q.  By signing KBI's 2010 Annual Report on SEC Form 10-K and approving KBI's first through third quarter 2010 Quarterly Reports on SEC Form 10-Q, defendant Benaroya breached his fiduciary duty of loyalty (and candor and good faith) and violated the federal securities laws by making false and misleading statements to KBI shareholders.  Benaroya is a citizen of the State of New Jersey.

15.     Defendant Mario Ciampi ("Ciampi") has been a director of KBI since 2007.  Due to KBI's extensive import operations, defendant Ciampi knew, at all relevant times, that KBI was subject to U.S. Customs rules and regulations and anti-dumping laws.  Ciampi also knew that, under U.S. Customs rules and regulations, KBI needed to pay customs duties on goods imported from China and elsewhere.  Defendant Ciampi also knew, at all relevant times, that KBI needed to implement an internal controls system to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates.  Directors of New Jersey corporations are generally presumed to know that they have a duty to operate the corporation lawfully and in accordance with the statutory laws applicable to its business.  Therefore, defendant Ciampi owed KBI a duty of loyalty to implement controls for compliance with U.S. Customs laws for goods imported from overseas.  But Ciampi did not, and KBI

substantially underpaid customs duties on goods imported by LaJobi into the United States. Defendant Ciampi also made false statements, or caused false statements to be made, about KBI's related-party transactions with the former owners of the LaJobi subsidiary in KBI's 2010 SEC Forms 10-K and 10-Q. By signing KBI's 2010 Annual Report on SEC Form 10-K and approving KBI's first through third quarter 2010 Quarterly Reports on SEC Form 10-Q, defendant Ciampi breached his fiduciary duty of loyalty (and candor and good faith) and violated the federal securities laws by making false and misleading statements to KBI shareholders. Ciampi is a citizen of the State of New York.

16.     Defendant Frederick J. Horowitz ("Horowitz") has been a director of KBI since 2006. Due to KBI's extensive import operations, defendant Horowitz knew, at all relevant times, that KBI was subject to U.S. Customs rules and regulations and anti-dumping laws.  Horowitz also knew that, under U.S. Customs rules and regulations, KBI needed to pay customs duties on goods imported from China and elsewhere. Defendant Horowitz also knew, at all relevant times, that KBI needed to implement an internal controls system to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates.  Directors of New Jersey corporations are generally presumed to know that they have a duty to operate the corporation lawfully and in accordance with the statutory laws applicable to its business. Therefore, defendant Horowitz owed KBI a duty of loyalty to implement

- 9 -

controls for compliance with U.S. Customs laws for goods imported from overseas. But Horowitz did not, and KBI substantially underpaid customs duties on goods imported by LaJobi into the United States. Defendant Horowitz also made false statements, or caused false statements to be made, about KBI's related-party transactions with the former owners of the LaJobi subsidiary in KBI's 2010 SEC Forms 10-K and 10-Q. By signing KBI's 2010 Annual Report on SEC Form 10-K and approving KBI's first through third quarter 2010 Quarterly Reports on SEC Form 10-Q, defendant Horowitz breached his fiduciary duty of loyalty (and candor and good faith) and violated the federal securities laws by making false and misleading statements to KBI shareholders. Horowitz is a citizen of the State of New Jersey.

17. Defendant Hugh R. Rovit ("Rovit") has been a director of KBI since 2010. Due to KBI's extensive import operations, defendant Rovit knew, at all relevant times, that KBI was subject to U.S. Customs rules and regulations and anti-dumping laws. Rovit also knew that, under U.S. Customs rules and regulations, KBI needed to pay customs duties on goods imported from China and elsewhere. Defendant Rovit also knew, at all relevant times, that KBI needed to implement an internal controls system to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates. Directors of New Jersey corporations are generally presumed to know that they have a duty to operate the corporation lawfully and in accordance with the statutory laws applicable to its business. Therefore, defendant

Rovit owed KBI a duty of loyalty to implement controls for compliance with U.S. Customs laws for goods imported from overseas. But Rovit did not, and KBI substantially underpaid customs duties on goods imported by LaJobi into the United States. Defendant Rovit also made false statements, or caused false statements to be made, about KBI's related-party transactions with the former owners of the LaJobi subsidiary in KBI's 2010 SEC Forms 10-K and 10-Q. By signing KBI's 2010 Annual Report on SEC Form 10-K and approving KBI's first through third quarter 2010 Quarterly Reports on SEC Form 10-Q, defendant Rovit breached his fiduciary duty of loyalty (and candor and good faith) and violated the federal securities laws by making false and misleading statements to KBI shareholders. Rovit is a citizen of the State of New Jersey.

18.     Defendant Salvatore M. Salibello ("Salibello") has been a director of KBI since 2006. Due to KBI's extensive import operations, defendant Salibello knew, at all relevant times, that KBI was subject to U.S. Customs rules and regulations and anti-dumping laws. Salibello also knew that, under U.S. Customs rules and regulations, KBI needed to pay customs duties on goods imported from China and elsewhere. Defendant Salibello also knew, at all relevant times, that KBI needed to implement an internal controls system to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates. Directors of New Jersey corporations are generally presumed to know that they have a duty to operate the

corporation lawfully and in accordance with the statutory laws applicable to its business. Therefore, defendant Salibello owed KBI a duty of loyalty to implement controls for compliance with U.S. Customs laws for goods imported from overseas. But Salibello did not, and KBI substantially underpaid customs duties on goods imported by LaJobi into the United States. Defendant Salibello also made false statements, or caused false statements to be made, about KBI's related-party transactions with the former owners of the LaJobi subsidiary in KBI's 2010 SEC Forms 10-K and 10-Q. By signing KBI's 2010 Annual Report on SEC Form 10-K and approving KBI's first through third quarter 2010 Quarterly Reports on SEC Form 10-Q, defendant Salibello breached his fiduciary duty of loyalty (and candor and good faith) and violated the federal securities laws by making false and misleading statements to KBI shareholders. Salibello is a citizen of the State of New York.

19.     Defendant John Schaefer ("Schaefer") was a director of KBI from 2008 until his resignation from the Board in July 2010. Due to KBI's extensive import operations, defendant Schaefer knew, at all relevant times, that KBI was subject to U.S. Customs rules and regulations and anti-dumping laws. Schaefer also knew that, under U.S. Customs rules and regulations, KBI needed to pay customs duties on goods imported from China and elsewhere. Defendant Schaefer also knew, at all relevant times, that KBI needed to implement an internal controls system to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates.

Directors of New Jersey corporations are generally presumed to know that they have a duty to operate the corporation lawfully and in accordance with the statutory laws applicable to its business. Therefore, defendant Schaefer owed KBI a duty of loyalty to implement controls for compliance with U.S. Customs laws for goods imported from overseas. But Schaefer did not, and KBI substantially underpaid customs duties on goods imported by LaJobi into the United States. Defendant Schaefer also made false statements, or caused false statements to be made, about KBI's related-party transactions with the former owners of the LaJobi subsidiary in KBI's 2010 SEC Forms 10-K and 10-Q. Schaefer is a citizen of the State of Ohio.

20.     Defendant Michael Zimmerman ("Zimmerman") has been a director of KBI since 2006. Due to KBI's extensive import operations, defendant Zimmerman knew, at all relevant times, that KBI was subject to U.S. Customs rules and regulations and anti-dumping laws. Zimmerman also knew that, under U.S. Customs rules and regulations, KBI needed to pay customs duties on goods imported from China and elsewhere. Defendant Zimmerman also knew, at all relevant times, that KBI needed to implement an internal controls system to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates. Directors of New Jersey corporations are generally presumed to know that they have a duty to operate the corporation lawfully and in accordance with the statutory laws applicable to its business. Therefore, defendant Zimmerman owed KBI a duty of loyalty to implement

controls for compliance with U.S. Customs laws for goods imported from overseas. But Zimmerman did not, and KBI substantially underpaid customs duties on goods imported by LaJobi into the United States. Defendant Zimmerman also made false statements, or caused false statements to be made, about KBI's related-party transactions with the former owners of the LaJobi subsidiary in KBI's 2010 SEC Forms 10-K and 10-Q. By signing KBI's 2010 Annual Report on SEC Form 10-K and approving KBI's first through third quarter 2010 Quarterly Reports on SEC Form 10-Q, defendant Zimmerman breached his fiduciary duty of loyalty (and candor and good faith) and violated the federal securities laws by making false and misleading statements to KBI shareholders. Zimmerman is a citizen of the State of New York.

## THE FIDUCIARY DUTIES OF KBI'S DIRECTORS AND OFFICERS

21.     Under New Jersey law, the directors of a corporation are responsible for managing its affairs. They owe the corporation an unremitting duty of loyalty and, therefore, must operate the corporation lawfully and in accordance with the statutes, rules and regulations applicable to its business. When faced with a known duty to act, such as in the case of requiring the corporation to comply with the federal laws applicable to its business, directors who fail to act breach their duty of loyalty and may be held liable to the corporation for damages.

22.     As fiduciaries, corporate directors and officers must protect the corporation's assets and property against losses, whether actual or threatened. They

must avoid avoidable losses to the corporation whenever possible or reasonable to do so. This includes, among other things, causing the corporation to implement business practices and internal controls called for by federal statutes applicable to the corporation's business.

23.    Directors also owe the corporation and its shareholders a duty of candor. Whenever directors choose to speak on behalf of the corporation, they have a duty to speak the complete, full and unvarnished truth. Directors who make false and misleading statements in the corporation's shareholder reports and/or SEC filings act disloyally and may be held liable to the corporation.

## FACTUAL ALLEGATIONS

24.    KBI designs and distributes infant and children's consumer products through four wholly-owned subsidiaries. KBI's LaJobi subsidiary, which is at the heart of this litigation, primarily sells cribs, mattresses and nursery furniture which are imported from China, Hong Kong, Vietnam and Thailand.

### KBI's Duty to Obey the Law and Defendants' Oversight Duties

25.    As an issuer of securities registered under the U.S. federal securities laws and an importer of a significant volume of products from overseas, KBI's operations are subject to extensive regulation by U.S. authorities, including the U.S. Securities and Exchange Commission, the U.S. Department of Justice, and the U.S. Customs and Boarder Protection Agency. KBI's business and operations are also subject to federal

statutes such as the Foreign Corrupt Practices Act ("FCPA"), and anti-dumping laws, as well as the local laws of the jurisdictions in which it operates.

26.     The ultimate responsibility for ensuring KBI's compliance with the myriad of federal laws and regulations governing KBI's domestic and overseas operations rests with its board of directors.  This is because the board of directors is responsible for managing the Company, and owes the Company a fiduciary duty of loyalty to operate its affairs within the contours of the laws applicable to the Company's business.  When faced with a known duty to act, such as policing the corporation's compliance with federal customs and securities laws, rules and regulations, the directors must act to safeguard the Company's assets and property against fines, penalties, sanctions and other losses.  Directors who fail to act breach their fiduciary of loyalty (and good faith) and may be held liable to the Company.

**KBI's Violations of U.S. and Local**
**Foreign Laws at Its LaJobi Subsidiary**

27.     Between March 15, 2011 and March 31, 2011, KBI shareholders learned that the Company had violated anti-dumping laws by underpaying the customs duties due on products imported into the United States by LaJobi.  According to KBI's March 15, 2011 SEC Form 8-K, there were "instances at LaJobi in which incorrect import duties were applied on certain wooden furniture imported from vendors in China, resulting in a violation of anti-dumping regulations."  And the Company's March 31, 2011 SEC Form 10-K stated:

Our LaJobi subsidiary has been selected by U.S. Customs for a "Focused Assessment" of its import practices and procedures, which "Focused Assessment" commenced January 19, 2011. In preparing for the Focused Assessment, which is ongoing, we found certain potential issues with respect to LaJobi's import practices. As a result, our Board of Directors initiated an investigation, supervised by a Special Committee of three non-management members of the Board.... On the basis of their investigation, the Board concluded that there was misconduct involved on the part of certain LaJobi employees in connection with the incorrect payment of duties, including misidentifying the manufacturer and shipper of products. As a result, effective March 14, 2011, LaJobi's President, Lawrence Bivona, and LaJobi's Managing Director of operations were both terminated from employment.

28.     To deflect attention away from their own failure to implement internal controls at LaJobi to comply with U.S. Customs laws and regulation, defendants also claimed "that there was misconduct involved on the part of certain LaJobi employees in connection with the incorrect payment of duties, including misidentifying the manufacturer and shipper of products." March 15, 2011 SEC Form 8-K.

29.     In addition, on March 31, 2011, in its 2010 SEC Form 10-K, KBI revealed that it owes approximately $7 million in customs duty to U.S. Customs, and could face a penalty of up to 100% customs duty:

[W]e currently expect to complete a voluntary prior disclosure to U.S. Customs identifying certain underpayments of import duty, and remit payment of customs duty not paid, with interest thereon. Accordingly, for the fourth quarter and year ended December 31, 2010, we recorded a charge in the amount of $6,860,000 (which includes approximately $340,000 of interest) for import duties we anticipate will be owed to U.S. Customs by LaJobi in respect of such underpayments. This charge was recorded in cost of sales (other than the interest portion, which was recorded in interest expense), and *adversely affected* gross margins and *net income* for the affected periods.... In addition, we may be assessed

- 17 -

by U.S. Customs a penalty of up to 100% of any customs duty owed, as well as possibly being subject to fines, penalties or other measures from U.S. Customs or other governmental authorities.

30.    The Company added, "[a]ny amounts owed in excess of the accrual recorded for the fourth quarter and full year ended December 31, 2010 will adversely affect our gross margin and net income for the period(s) in which such amounts may be recorded and could have a material adverse affect [sic] on our results of operations."

31.    The Company also revealed additional, more troubling facts about LaJobi's business and staffing practices in Asia, and likely violations of local foreign laws in the jurisdictions in which LaJobi operated.  As to LaJobi's business and staffing practices in Asia, KBI admitted:

> [T]he Company has determined that the Company incorrectly described certain payments as being made by LaJobi entirely to L&J Industries (a company established by Lawrence Bivona, the former President of LaJobi, and various members of his family, to provide quality control, compliance and other services to LaJobi for goods shipped from Asian ports) in its quarterly reports during 2010.  In particular, the Company's Quarterly Reports on Form 10-Q for the quarters ended March 31, 2010, June 30, 2010 and September 30, 2010, reported that payments of $311,000, $200,000 and $300,000, respectively, were made by LaJobi to L&J Industries for such services.  However, while the reported amounts were correct, during such periods, all or a portion of such payments were actually made by LaJobi to individuals in Hong Kong, China, Vietnam and Thailand providing such services, including through an individual based in Hong Kong, rather than to L&J Industries.  LaJobi ceased making payments to L&J Industries altogether in June 2010, when it became aware that L&J Industries has ceased operations.

32.    The Company further revealed grimly that "the payment and other practices with respect to quality control, compliance and certain other services in Hong Kong, China, Vietnam and Thailand violated civil laws and potentially violated criminal laws in these jurisdictions" and that " there can be no assurance as to how the resulting consequences, if any, may impact our internal controls, business, reputation, results of operations or financial condition."

33.    On this news, the trading price of KBI collapsed, wiping out millions in shareholder equity. Moreover, as a result of the LaJobi debacle, KBI has been named as a defendant in a large and costly-to-defend class action lawsuit for alleged violations of the federal securities laws. *See Rahman v. Kid Brands, Inc., et al.*, No. 11-cv-01624-JLL-CCC (D.N.J.).

**The KBI Board's False and
Misleading Statements About LaJobi**

34.    Defendants breached their fiduciary duty of loyalty (and candor) owed to KBI by making false and misleading statements to KBI shareholders in the Company's Annual Report on SEC Form 10-K and the first, second and third quarter 2010 Quarterly Reports on SEC Form 10-Q.  In particular, as KBI admits, these shareholder reports contained incorrect information related to certain related-party transactions involving KBI and L&J Industries.

35.    For instance, in KBI's 2009 Annual Report on SEC Form 10-K, dated March 26, 2010, defendants stated:

Lawrence Bivona, the President of LaJobi, along with various family members, established L&J Industries, in Asia. The purpose of the entity is to provide quality control services to LaJobi for goods being shipped from Asian ports. The Company has used this service since April 2008. For the years ended December 31, 2009 and 2008, the Company incurred costs, recorded in cost of goods sold, aggregating approximately $1.0 million and $0.7 million, respectively, related to the services provided. Such costs were based on the actual, direct costs incurred by L&J Industries for such individuals.

36.     Similarly, in KBI's 2009 Annual Report on SEC Form 10-K/A, dated

April 30, 2010, defendants stated:

Lawrence Bivona, an executive officer of the Company, along with members of his family, established L&J Industries, in Asia. This entity provides quality control services to LaJobi for goods being shipped from Asian ports. The Company has used this service since April 2008. For the year ended December 31, 2009 and the three months ended March 31, 2010, the Company incurred costs totaling approximately $1.0 million and $0.3 million, respectively, related to the services provided, which costs were based on the actual, direct costs incurred by L&J Industries for such individuals.

37.     Likewise, in KBI's first quarter 2010 Quarterly Report on SEC Form 10-

Q, dated May 5, 2010, defendants stated:

Lawrence Bivona, the President of LaJobi, along with various family members, established L&J Industries, in Asia. The purpose of the entity is to provide quality control services to LaJobi for goods being shipped from Asian ports. The Company has used this service since April 2008. For the three months ended March 31, 2010 and 2009, the Company incurred costs, recorded in cost of goods sold, aggregating approximately $311,000 and $266,000 respectively, related to the services provided. Such costs were based on the actual, direct costs incurred by L&J Industries for such individuals.

38.     Further, in KBI's second quarter 2010 Quarterly Report on SEC Form

10-Q, dated August 4, 2010, defendants stated:

Lawrence Bivona, the President of LaJobi, along with various family members, established L&J Industries, in Asia. The purpose of the entity is to provide quality control services to LaJobi for goods being shipped from Asian ports. The Company has used this service since April 2008, and reimburses L&J Industries for the actual, direct costs incurred by such entity for the services provided. For the three and six months ended June 30, 2010, the Company incurred costs, recorded in cost of goods sold, aggregating approximately $0.2 million and $0.5 million, respectively, related to the services provided. For the three and six months ended June 30, 2009, the Company incurred costs, recorded in cost of goods sold, aggregating approximately $0.3 million and $0.6 million respectively, related to the services provided.

39.     And further still, in KBI's third quarter 2010 Quarterly Report on SEC

Form 10-Q, dated November 3, 2010, defendants stated:

Lawrence Bivona, the President of LaJobi, along with various family members, established L&J Industries, in Asia. The purpose of the entity is to provide quality control services to LaJobi for goods being shipped from Asian ports. The Company has used this service since April 2008, and reimburses L&J Industries for the actual, direct costs incurred by such entity for the services provided. For the three and nine months ended September 30, 2010, the Company incurred costs, recorded in cost of goods sold, aggregating approximately $0.3 million and $0.8 million, respectively, related to the services provided. For the three and nine months ended September 30, 2009, the Company incurred costs, recorded in cost of goods sold, aggregating approximately $0.2 million and $0.8 million respectively, related to the services provided.

40.     Defendants owed KBI a duty of candor. Whenever they spoke on KBI's

behalf, defendants had a duty to speak the complete, full and unvarnished truth.

However, as demonstrated above, defendants breached this duty when they issued

KBI's 2010 Annual Report on SEC Form 10-K and approved KBI's first, second and

third quarter 2010 Quarterly Reports on SEC Form 10-Q, without disclosing the

adverse, material non-public facts about the LaJobi affair set forth above.

- 21 -

## DAMAGE TO KBI

41.    KBI has been severely damaged and stands to suffer additional damage, injury and losses arising from the LaJobi affair.  Due to the U.S. and foreign local law violations at the Company, KBI has been exposed to a costly and expensive internal investigation.  The Company is or is likely to be subject to federal, and, perhaps, overseas, investigations as well.  Moreover, the Company has also been exposed to huge damages arising from its potential violations of the federal securities laws, as well as potentially other U.S. federal laws and the local laws of the jurisdictions in which KBI operates.

42.    KBI has been, and will continue to be, severely damaged and injured by defendants' misconduct.  These damages and injuries include: (i) costs incurred from the investigations into the Company for violations of U.S. Customs and foreign local laws; (ii) costs incurred in connection with a federal securities class action lawsuit filed against the Company; (iii) customs duty owed to federal authorities and resulting fines, penalties and disgorgement; and (iv) the cost of implementing any remedial actions called for by settlements arising from the LaJobi debacle.

43.    Nevertheless, the KBI Board has not commenced legal action against defendants, and will not because they are personally interested in the outcome of this litigation.  By this action, plaintiff seeks to vindicate KBI's rights against its wayward fiduciaries who damaged KBI by their failure to implement internal controls for

compliance with U.S. Customs and local foreign laws, rules and regulations at its LaJobi subsidiary.

## DERIVATIVE ALLEGATIONS

44.    Plaintiff incorporates ¶¶1-43.

45.    Pursuant to Rule 23.1 of the Federal Rules of Civil Procedures, plaintiff brings this action for the benefit of KBI to redress injuries suffered, and to be suffered, by KBI as a result of the defendants' misconduct.

46.    Plaintiff properly commenced this action without making a pre-suit demand upon the KBI Board.  The members of the KBI Board are disabled from fairly evaluating the derivative claims, let alone vigorously prosecuting them, because they are each responsible for damages suffered by KBI as a result of the LaJobi affair, and for making false and misleading statements to KBI shareholders regarding the nature of the Company's related-party transactions with the former owners of LaJobi. Accordingly, a pre-suit demand upon the KBI Board is a useless and futile action, and therefore, excused.

47.    More specifically, a pre-suit demand is excused because the entire KBI Board breached its fiduciary duty of candor and loyalty by failing to implement an internal controls system for compliance with U.S. Customs rules and regulations, and the local foreign laws in the jurisdictions where KBI operates.  Defendants were aware of LaJobi's obligations to pay customs duties on goods imported from China and elsewhere, and to avoid violations of anti-dumping laws.  Nevertheless, defendants did

- 23 -

not cause KBI to put such internal controls in place, and, as a result, breached their duty of loyalty to KBI. Defendants' utter failure to act when faced with a known duty to act cannot be indemnified by KBI. As a result, defendants face substantial likelihood of liability and therefore, a pre-suit demand on the KBI Board is excused.

48.     Additionally, a pre-suit demand on defendant Crain is excused because his primary employment is as CEO of KBI. Crain has pocketed more than $2.25 million in compensation, including stock options, while KBI lacked internal controls for compliance with the U.S. Customs laws and the local foreign laws in the jurisdictions where KBI operates. Therefore, Crain financially benefitted from the misconduct particularized in this Complaint and, therefore, is disabled from considering a pre-suit demand.

49.     Plaintiff has not made any demand on shareholders of KBI to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     KBI is a publicly traded company with approximately 21.6 million shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against All Defendants for Breach of Fiduciary
### Duty of Loyalty (and Good Faith)

50.  Plaintiff incorporates ¶¶1-49.

51.  Defendants owed KBI a fiduciary duty of loyalty (and good faith).  This duty includes an obligation, of which defendants were fully aware, to manage and oversee KBI's business and affairs lawfully and in accordance with the laws applicable to KBI's operations, including U.S. Customs laws and the local foreign laws in the jurisdictions where KBI operates.

52.  Defendants, however, did not have KBI implement an internal controls system for compliance with U.S. Customs laws and the local foreign laws in the jurisdictions where KBI operates.  Defendants' failures to implement internal controls at KBI's overseas operations were conscious, and contrary to their duty.

53.  KBI has been severely injured by defendants' disloyal and faithless acts. Accordingly, KBI should be awarded damages and equitable relief.

## COUNT II

### Against All Defendants for Breach of
### Fiduciary Duty of Loyalty (Candor)

54.  Plaintiff incorporates ¶¶1-49.

55.  Defendants owed KBI a fiduciary duty to speak the full truth whenever they undertook to speak for KBI.  Defendants, however, breached their duty of candor when they disseminated materially false and misleading information to KBI

- 25 -

shareholders about KBI's related-party transactions with the former owners of LaJobi. They also breached their duty of candor by concealing the fact that, although defendants knew that KBI needed to have internal controls for compliance with U.S. Customs laws and the local foreign laws in the jurisdictions where KBI operates, defendants did not cause KBI to implement them.

56.     Defendants also did not correct their false and misleading statements in KBI's 2010 Annual Report on SEC Form 10-K and first, second and third quarter 2010 Quarterly Reports on SEC Form 10-Q regarding the Company's compliance with U.S. Customs and/or foreign laws, and/or KBI's related-party transactions with LaJobi's former owners.  These actions were not a good faith exercise of business judgment to protect and promote KBI's legitimate corporate interests.

57.     KBI has been severely injured by defendants' disloyalty and lack of candor.  Accordingly, KBI should be awarded damages and equitable relief.

## COUNT III

### Against All Defendants for Gross Mismanagement

58.     Plaintiff incorporates ¶¶1-49.

59.     By causing KBI to operate without an internal controls system for compliance with U.S. Customs laws and the local foreign laws in the jurisdictions where KBI operates, defendants grossly mismanaged KBI's business and affairs. Defendants were aware of the FCPA's ban on bribing officials in other countries to get or retain business.  They also knew that KBI needed to implement internal controls

for compliance with U.S. Customs laws and the local foreign laws in the jurisdictions where KBI operates. Instead, defendants grossly mismanaged KBI's business by ignoring the Company's obligations under U.S. Customs laws and the local foreign laws applicable to its business.

60.    KBI has been severely injured by defendants' gross mismanagement. Accordingly, KBI should be awarded damages and equitable relief.

## COUNT IV

### Against All Defendants for Abuse of Control

61.    Plaintiff incorporates ¶¶1-49.

62.    By causing KBI to operate without an internal controls system for compliance with the FCPA, defendants abused their control of KBI's business and affairs. Defendants were aware of KBI's obligations to pay customs duties on imported goods. They also knew that KBI needed to implement internal controls for compliance with U.S. Customs laws and the local foreign laws in the jurisdictions where KBI operates. Instead, defendants abused their control of KBI by ignoring the Company's obligations under U.S. Customs laws and the local foreign laws applicable to KBI's business.

63.    KBI has been severely injured by defendants' abuse of control. Accordingly, KBI should be awarded damages and equitable relief.

## COUNT V

### Against All Defendants for Corporate Waste

64.     Plaintiff incorporates ¶¶1-49.

65.     While under the stewardship of KBI's directors, KBI violated U.S. Customs laws and the local foreign laws in the jurisdictions where KBI operates. Additionally, KBI has and will incur millions in additional damages in the form of internal investigative costs and remediation efforts. Therefore, any temporary benefits that KBI may have obtained through underpaying customs duties and engaging in business and staffing practices that violated the local foreign laws where KBI operates have been eclipsed by the damages arising from defendants' failure to cause KBI to implement internal controls for compliance with the laws applicable to its business. In short, defendants wasted KBI's valuable corporate assets.

66.     KBI has been severely injured by defendants' waste of corporate assets. Accordingly, KBI should be awarded damages and equitable relief.

## COUNT VI

### Against All Defendants for Unjust Enrichment

67.     Plaintiff incorporates ¶¶1-49.

68.     Defendants have been unjustly enriched at the expense of and to the detriment of KBI. While breaching their fiduciary duty, defendants received incentive compensation and fees from KBI that were neither justified nor in the best interest of KBI.

- 28 -

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment in favor of KBI against all defendants as follows:

A.      Declaring that plaintiff may maintain this action on behalf of KBI and that plaintiff is an adequate representative of KBI;

B.      Declaring that defendants have violated, among other things, their fiduciary duty of loyalty (and good faith and candor) owed to KBI;

C.      Determining and awarding to KBI the damages sustained by it as a result of the violations set forth above from each of the defendants, jointly and severally, together with interest thereon;

D.      Determining and awarding to KBI exemplary damages in an amount necessary to punish defendants and to make an example of defendants to the community according to proof at trial;

E.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  May 20, 2011

BRICKFIELD & DONAHUE
PAUL B. BRICKFIELD


*/s/ Paul B. Brickfield, Esq.*
PAUL B. BRICKFIELD, Esq.

70 Grand Avenue, Suite 102
River Edge, NJ 07661
Telephone:  (201) 488-7707
Fax: (201) 488-9559

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS
TRAVIS E. DOWNS III
BENNY C. GOODMAN III
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

VANOVERBEKE MICHAUD &
   TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Attorneys for Plaintiff

## VERIFICATION

I, John Chirkun, hereby declare as follows:

I am the Chairman of the City of Roseville Employees Retirement System ("Retirement System"). The Retirement System is a shareholder of Kid Brands, Inc. The Retirement System was a shareholder at the time of the wrongdoing complained of and the Retirement System remains a shareholder. The Retirement System has retained competent counsel and is ready, willing and able to pursue this action vigorously on behalf of Kid Brands, Inc. I have reviewed the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Gross Mismanagement, Abuse of Control, Corporate Waste and Unjust Enrichment. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: 5-16-2011

John Chirkun