BRICKFIELD & DONAHUE
PAUL B. BRICKFIELD
70 Grand Avenue, Suite 102
River Edge, NJ  07661
Telephone:  201/488-7707
201/488-9559 (fax)

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of KID BRANDS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BRUCE G. CRAIN, et al., <br><br> Defendants, <br><br> – and – <br><br> KID BRANDS, INC., a New Jersey corporation, <br><br> Nominal Defendant. | No. 2:11-cv-02919-JLL-CCC <br><br> PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' AND NOMINAL DEFENDANT KID BRANDS, INC.'S MOTIONS TO DISMISS |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................1

II.   THE COMPLAINT'S FACTUAL ALLEGATIONS ....................................6

III.   DEFENDANTS' MOTIONS TO DISMISS SHOULD BE DENIED...........9

    A.   Plaintiff Adequately Alleges Demand Futility......................................9

        1.   Standards for Demand Futility.....................................9

        2.   The Complaint States a Claim for Breach of Loyalty
Under *AmSouth* ........................................................15

            a.   Defendants Had a Known Duty to Implement
Internal Controls to Ensure KBI Met Its Payment
Obligations Under U.S. Customs Rules and Local
Foreign Laws ...............................................................17

            b.   Defendants Failed to Implement Internal Controls
at KBI..........................................................................19

        3.   Demand Is Futile Because Each KBI Board Member
Faces a Substantial Likelihood of Liability Resulting
from Their Breach of Loyalty ....................................22

        4.   Demand Is Further Excused Because the Entire KBI
Board Breached Its Fiduciary Duty of Loyalty by Making
False Statements to Shareholders ...............................25

    B.   Plaintiff's Claims for Relief Are Adequately Pled ..............................27

        1.   Pleading Standard Applicable to Plaintiffs' Claims for
Relief.........................................................................27

        2.   The Complaint Alleges Claims for Gross
Mismanagement and Abuse of Control .....................30

        3.   The Complaint Alleges a Claim for Waste...............31

- i -

**Page**

    4.    The Complaint Alleges a Claim for Unjust Enrichment ..........32

C.    The Company's Certificate of Incorporation Cannot Exculpate Defendants from Liability ...................................................................33

IV.    CONCLUSION...............................................................................................35

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ...........................................................................10, 17

*Beam v. Stewart*,
845 A.2d 1040 (Del. 2004) ...............................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................28

*Bodell v. Gen. Gas. & Electric Corp.*,
140 A. 264 (Del. 1927) ......................................................................................30

*Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv.*,
No. 13389, 1996 Del. Ch. LEXIS 116
(Del. Ch. Sept. 3, 1996), *aff'd*, 1997 Del. LEXIS 58
(Del. Feb. 11, 1997) ..........................................................................................30

*Daloisio v. Peninsula Land Co.*,
43 N.J. Super. 79 (App. Div. 1956) .............................................................25, 26

*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007) ...............................................................16, 23, 24

*Emerald Partners v. Berlin*,
726 A.2d 1215 (Del. 1999) ................................................................................26

*Emerald Partners v. Berlin*,
787 A.2d 85 (Del. 2001) ....................................................................................34

*Evancho v. Fisher*,
423 F.3d 347 (3d Cir. 2005) ..............................................................................27

*Francis v. United Jersey Bank*,
87 N.J. 15 (1981) .........................................................................................17, 18

*Green Party v. Hartz Mt. Indus.*,
164 N.J. 127 (2000) ...........................................................................................12

- iii -

**Page**

*Grimes v. Donald*,
  673 A.2d 1207 (Del. 1996) ...................................................................11

*Guttman v. Jen-Hsun Huang*,
  823 A.2d 492 (Del. Ch. 2003) ...............................................................16

*Havens v. Attar*,
  No. 15134, 1997 Del. Ch. LEXIS 12
  (Del. Ch. Jan. 30, 1997) .......................................................................30

*Hendry v. Hendry*,
  No. CIV. A. 12236, 2006 WL 1565254
  (Del. Ch. May 26, 2006) .......................................................................30

*In re Abbott Labs. Deriv. S'holders Litig.*,
  325 F.3d 795 (7th Cir. 2003) ................................................................34

*In re Caremark Int'l*,
  698 A.2d 959 (Del. Ch. 1996) ...........................................................3, 15

*In re Cendant Corp. Derivative Action Litig.*,
  189 F.R.D. 117 (D.N.J. 1999)...........................................................10, 13

*In re Cooper Cos. S'holders Derivative Litig.*,
  No. 12584, 2000 Del. Ch. LEXIS 158
  (Del. Ch. Oct. 31, 2000)........................................................................22

*In re FirstEnergy S'holder Derivative Litig.*,
  320 F. Supp. 2d 621 (N.D. Ohio 2004) .................................................28

*In re HealthSouth Corp. S'holders Litig.*,
  845 A.2d 1096 (Del. Ch. 2003) ............................................................33

*In re infoUSA, Inc. S'holders Litig.*,
  953 A.2d 963 (Del. Ch. 2007) ..............................................................25

*In re Massey Energy Co.*,
  No. 5430-VCS, 2011 WL 2176479
  (Del. Ch. May 31, 2011).......................................................................11

650874_1

**Page**

*In re Midlantic Corp. S'holder Litig.*,
758 F. Supp. 226 (D.N.J. 1990) ..........................................................................15

*In re MRV Commc'ns, Inc. Deriv. Litig.*,
No. CV 08-03800 GAF RCX, 2010 WL 5313442
(C.D. Cal. Dec. 27, 2010) ...................................................................................32

*In re Netsmart Techs., Inc. S'holders Litig.*,
924 A.2d 171 (Del. Ch. 2007) ............................................................................25

*In re PSE&G S'holder Litig.*,
173 N.J. 258 (2002) ........................................................................................3, 10

*In re Pure Res., Inc., S'holders Litig.*,
808 A.2d 421 (Del. Ch. 2002) ............................................................................25

*In re SFBC Int'l, Inc. Sec. & Derivative Litig.*,
495 F. Supp. 2d 477 (D.N.J. 2007)............................................................4, 11, 22

*In re Tower Air, Inc.*,
416 F.3d 229 (3d Cir. 2005) ...............................................................................29

*In re Tyson Foods, Inc. Consol. S'holder Litig.*,
No. 1106-CC, 2007 Del. Ch. LEXIS 120
(Del. Ch. Aug. 15, 2007) ....................................................................................18

*In re Veeco Instruments, Inc. Sec. Litig.*,
434 F. Supp. 2d 267 (S.D.N.Y. 2006) .................................................................14

*In re Walt Disney Co. Derivative Litig.*,
825 A.2d 275 (Del. Ch. 2003) ............................................................................28

*In re Zoran Corp. Derivative Litig.*,
511 F. Supp. 2d 986 (N.D. Cal. 2007).................................................................33

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
741 A.2d 377 (Del. Ch. 1999) ............................................................................32

*Kahn ex rel. DeKalb Genetics Corp. v. Roberts*,
679 A.2d 460 (Del. 1996) ...................................................................................12

- v -

**Page**

*Kamen v. Kemper Fin. Servs.*,
500 U.S. 90 (1991)............................................................................................10

*Kanter v. Barella*,
489 F.3d 170 (3rd Cir. 2007) .....................................................................24, 27

*King v. Baldino*,
648 F. Supp. 2d 609 (D. Del. 2009),
*aff'd*, 409 Fed. Appx. 535 (3d Cir. 2010) ........................................................16

*Landy v. D'Alessandro*,
316 F. Supp. 2d 49 (D. Mass. 2004)................................................................28

*Lewis v. Curtis*,
671 F.2d 779 (3d. Cir. 1982) ...........................................................................14

*Lewis v. Vogelstein*,
699 A.2d 327 (Del. Ch. 1997) ..........................................................................31

*Malone v. Brincat*,
722 A.2d 5 (Del. 1998) ...............................................................................25, 26

*Matrixx Initiatives, Inc. v. Siracusano*,
__ U.S. __, 131 S. Ct. 1309 (2011)............................................................13, 20

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
854 A.2d 121 (Del. Ch. 2004) ....................................................................12, 17

*Mizel v. Connelly*,
No. 16638, 1999 Del. Ch. LEXIS 157
(Del. Ch. Aug. 2, 1999) ....................................................................................23

*Perkins ex rel. Bradley Pharms. Inc. v. Daniel*,
No. 06CV01518 (PGS), 2007 WL 4322596
(D.N.J. Dec. 6, 2007) ........................................................................................24

*Pfeiffer v. Toll*,
989 A.2d 683 (Del. Ch. 2010) ....................................................................12, 24

**Page**

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ...............................................................28

*Rabkin v. Philip A. Hunt Chem. Corp.*,
    547 A.2d 963 (Del. Ch. 1986) ............................................................30

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ....................................................10, 11, 22

*Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) ...............................................................10

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007) ...............................................4, 11, 14

*Ryan v. Lyondell Chem. Co.*,
    No. 3176-VCN, 2008 Del. Ch. LEXIS 125
    (Del. Ch. Aug. 29, 2008) ....................................................................33

*Sanders v. Wang*,
    No. 16640, 1999 Del. Ch. LEXIS 203
    (Del. Ch. Nov. 8, 1999) ......................................................................34

*Schock v. Nash*,
    732 A.2d 217 (Del. 1999) ...................................................................33

*Seidman v. Clifton Sav. Bank, S.L.A.*,
    No. A-4033-07T2, 2009 WL 2513797
    (N.J. Super. Ct. App. Div. Aug. 19, 2009),
    *aff'd*, 14 A.3d 36 (N.J. 2011) ..............................................................3

*Solomon v. Pathe Commc'ns Corp.*,
    672 A.2d 35 (Del. 1996) .....................................................................27

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ......................................................... *passim*

*Telxon Corp. v. Bogomolny*,
    792 A.2d 964 (Del. 2001) ...................................................................28

650874_1

Page

*Weiss v. Swanson*,
948 A.2d 433 (Del. Ch. 2008) ............................................................32

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§72..............................................................................................................2

N.J. Stat. Ann.
§14A:2-7(3) .............................................................................................33
§14A:6-14 ..........................................................................................11, 17

Federal Rule of Civil Procedure
Rule 8 ...................................................................................................28, 29
Rule 8(a)(2)...............................................................................................27
Rule 12(b)(6)................................................................................ *passim*
Rule 12 .......................................................................................................28
Rule 23.1 .............................................................................................10, 28

- viii -

Plaintiff City of Roseville Employees' Retirement System ("plaintiff") hereby submits its omnibus opposition to the motions to dismiss of defendants Bruce G. Crain, Raphael Benaroya, Mario Ciampi, Frederick J. Horowitz, Hugh R. Rovit, Salvatore M. Salibello, John Schaefer and Michael Zimmerman (the "KBI Board of Directors" or "KBI Board") and Marc S. Goldfarb and Guy A. Paglinco (collectively, "defendants") and Nominal Defendant Kid Brands, Inc. ("KBI" or the "Company").

## I.      INTRODUCTION

As the directors and top officers of a publicly traded international corporation, defendants each had a duty to implement an internal controls system to ensure that KBI met its customs duties payment obligations under U.S. Customs rules and regulations, and under the local foreign laws in the jurisdictions where the Company operates.  Despite this reasonable mandate, defendants failed to implement and maintain the required controls.  Defendants' failure to implement these controls caused the Company to admit that it violated "anti-dumping regulations" in relation to its China operations and "civil laws and potentially [] criminal laws" in Hong Kong, China, Vietnam and Thailand.  The rampant violations at KBI's international operations and the Company's admissions highlight the fact that KBI lacked the necessary internal controls to prevent and/or detect violations from occurring at its four wholly-owned subsidiaries, and its LaJobi, Inc. ("LaJobi") subsidiary in

particular.[1]   As a result of defendants' failure to implement these controls in dereliction of their fiduciary duty of loyalty, KBI, by and through its wholly-owned subsidiaries, substantially underpaid customs duties due on products imported into the United States in violation of the Anti-Dumping Act. *See* Anti-Dumping Act of 1916. 15 U.S.C. §72.

KBI's once valuable corporate franchise has been severely damaged by defendants' fiduciary breaches.  In fact, defendants' failure to implement the controls required for compliance with the Anti-Dumping Act has caused the Company to suffer nearly $10 million in aggregate customs duties charges to U.S. Customs and Border Protection ("U.S. Customs"), and could lead to an additional penalty of up to 100% of that amount.  The damage to KBI is compounded by the fact that KBI now faces expensive on-going internal investigations, investigations by federal and overseas authorities, millions of dollars in additional fines and disgorgement arising from violations of federal securities laws and/or foreign local laws, a costly-to-defend class action lawsuit for alleged violations of the federal securities laws, and a tainted global corporate image.

---

[1]   KBI's operations consist of LaJobi, Kids Line, LLC ("Kids Line"), Sassy, Inc. ("Sassy") and CoCaLo, Inc. ("CoCaLo"), each a direct or indirect wholly-owned subsidiary of KBI.

650874_1

Defendants' liability here is articulated by the decision in *Stone v. Ritter*, 911 A.2d 362 (Del. 2006) ("*AmSouth*").[2]  Under *AmSouth*, plaintiff need only plead that defendants: (1) had a known legal duty to implement internal controls to ensure compliance with U.S. Customs rules and regulations and local foreign laws; and (2) in the face of that duty, they "utterly failed" to put the controls in place, which is precisely the case here. *Id*. at 370.  Specifically, the *AmSouth* Court, sitting *en banc*, unanimously held:

> We hold that *Caremark* articulates the necessary conditions predicate for director oversight liability: ***(a) the directors utterly failed to implement any reporting or information system or controls***; ***or*** (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.  In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.  ***Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith***.

*Id*.[3] (some emphasis in original).  As KBI's directors and top officers, defendants bore primary responsibility for causing the Company to implement internal controls to

---

[2]     New Jersey courts typically "follow Delaware's pronouncements on corporate law" and should do so here.  *Seidman v. Clifton Sav. Bank, S.L.A.*, No. A-4033-07T2, 2009 WL 2513797, at \*9 n.5 (N.J. Super. Ct. App. Div. Aug. 19, 2009), *aff'd*, 14 A.3d 36 (N.J. 2011); *In re PSE&G S'holder Litig.*, 173 N.J. 258, 282-83 (2002).

[3]     For purposes of clarity, and to distinguish director liability based on the director's own actions as opposed to director liability for the actions of others, we

ensure compliance with federal anti-dumping provisions and foreign laws. ¶26. Each

defendant, however, failed to cause KBI to implement the necessary controls at KBI's

international operations and thus they each are liable for their fiduciary failures under

*AmSouth*. ¶¶11-20.[4]

Moreover, for these same reasons, defendants' defense of claiming that plaintiff

failed to allege futility of demanding action by the KBI Board of Directors fails.

Demand is excused as futile where the majority of a company's board of directors

faces a substantial likelihood of liability. *In re SFBC Int'l, Inc. Sec. & Derivative

Litig.*, 495 F. Supp. 2d 477, 486 (D.N.J. 2007) (demand excused because "the

directors have exposed themselves to liability by allegedly ignoring particularly

flagrant and reprehensible wrongdoing"); *Ryan v. Gifford*, 918 A.2d 341, 355 (Del.

Ch. 2007). As the Complaint sets forth, after LaJobi was selected by U.S. Customs

for a focused assessment (the "Focused Assessment") in December 2010, KBI

initiated an internal investigation into LaJobi's import practices and procedures that

---

refer to the theory of liability set forth in subparagraph (a) of the *AmSouth* decision as
an "*AmSouth* claim."

Unless otherwise noted, all emphasis is added and all internal citations are
omitted.

[4]   "¶" and "¶¶" references are to the Verified Shareholder Derivative Complaint
for Breach of Fiduciary Duty, Gross Mismanagement, Abuse of Control, Corporate
Waste and Unjust Enrichment ("Complaint"); unless otherwise stated, all emphasis is
added and citations omitted.

- 4 -

revealed violations of federal and foreign law.  ¶17.  As a result, on March 15, 2011,

defendants caused KBI to publicly admit that, while under their control, the Company

violated "anti-dumping regulations" with regard to LaJobi's operations in China.  ¶27.

On March 31, 2011, KBI further admitted that the Company's "payment and other

practices with respect to quality control, compliance and certain other services in

Hong Kong, China, Vietnam and Thailand violated civil laws and potentially violated

criminal laws . . . ."   ¶32.  Following its discovery of violations at LaJobi, KBI

authorized an additional internal investigation into the Company's three non-LaJobi

subsidiaries (the "Customs Review").  The Customs Review revealed additional U.S.

Customs violations dating back several years, thus indicating that defendants' failure

to implement controls was far reaching and not limited to its LaJobi operations.  Since

the entire KBI Board faces a substantial likelihood of liability for an *AmSouth* breach

of loyalty arising from its failure to implement internal controls on a Company-wide

basis, demand on the KBI Board is excused as futile.

A pre-suit demand on the KBI Board is also excused because a majority of the

KBI Board members breached their fiduciary duty of loyalty by making false and

misleading statements in KBI's SEC filings about KBI's related-party transactions

with the former owners of LaJobi, or causing such statements to be made, despite an

obligation to communicate honestly.  As KBI admitted on March 31, 2011 in its 2010

SEC Form 10-K, "the Company incorrectly described certain payments as being made

by LaJobi entirely to L&J Industries. . . .  However, while the reported amounts were

- 5 -

correct, during such periods, all or a portion of such payments were actually made by LaJobi to individuals in Hong Kong, China, Vietnam and Thailand. . . ."  ¶31.  This admission raises a reasonable doubt that the KBI Board would (and could) independently and objectively consider a demand.

Because the KBI Board cannot impartially consider a demand, demand must be excused as futile and defendants' motion to dismiss the Complaint based on demand futility should be denied.  Furthermore, because plaintiff has satisfied the higher burden of pleading demand futility, defendants' attempts to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) also fail.

## II.    THE COMPLAINT'S FACTUAL ALLEGATIONS

Based in New Jersey, KBI designs, imports, markets and distributes branded infant and children's consumer products through four wholly-owned subsidiaries. ¶¶10, 24.  For example, through its LaJobi subsidiary, KBI sells cribs, mattresses and nursery furniture imported from China, Hong Kong, Vietnam and Thailand.  ¶¶1, 24. As an issuer of securities registered under the U.S. federal securities laws and an importer of a significant volume of products from overseas, KBI's operations are subject to extensive regulation by U.S. authorities, including the U.S. Securities and Exchange Commission, the U.S. Department of Justice, and U.S. Customs.  ¶25. KBI's business and operations are also subject to federal statutes, such as the anti-dumping laws, as well as the local laws of the jurisdictions in which it operates.  ¶25. Pursuant to these regulations, KBI is required to pay customs duties on goods

- 6 -

imported into the United States from China and elsewhere.  ¶¶11-20.  To ensure that KBI meets its payment obligations under U.S. Customs rules and regulations and under the local foreign laws in the jurisdictions in which it operates, KBI needed an internal control system in China, Hong Kong, Vietnam, Thailand and elsewhere. ¶¶11-20.  Without such a system in place, defendants allowed KBI to substantially underpay customs duties in violation of these laws and regulations.  ¶¶11-20, 29.

On March 15, 2011, KBI shocked its shareholders by disclosing that it violated the U.S. anti-dumping laws by underpaying the customs duties due on products that LaJobi had imported into the United States.  ¶¶2, 27.  The Company acknowledged that there were "instances at LaJobi in which incorrect import duties were applied on certain wooden furniture imported from vendors in China, resulting in a violation of anti-dumping regulations."  *Id*.  Thereafter, on March 31, 2011, KBI further revealed that its "payment and other practices with respect to quality control, compliance and certain other services in Hong Kong, China, Vietnam and Thailand violated civil laws and potentially violated criminal laws in these jurisdictions."  ¶¶3, 27-32.  As a result of the Company's admitted failures at LaJobi, KBI recently revealed that an internal investigation into the customs compliance practices at KBI's three non-LaJobi subsidiaries was also initiated (the "Customs Review").  *See* Kid Brands, Inc. 2011 SEC Form 10-Q, dated August 15, 2011, at 21, 30, attached as Ex. A to the Declaration of Travis E. Downs III ("Downs Decl.") in Support of Plaintiff's Omnibus Opposition to Defendants' and Nominal Defendant Kid Brands, Inc.'s Motions to

- 7 -

Dismiss filed concurrently herewith.  The Customs Review "identified instances in which [Kids Line, LLC, CoCaLo, Inc. and Sassy, Inc.] filed incorrect entries and invoices with U.S. Customs as a result of, in the case of Kids Line, incorrect descriptions, classifications and valuations of certain products imported by Kids Line and, in the case of CoCaLo, incorrect classifications of certain products imported by CoCaLo." *Id.*

Despite defendants' knowledge as to customs issues plaguing the Company, defendants failed to accurately report these issues in their SEC filings.  In fact, KBI acknowledged that its 2010 annual report filed with the SEC on Form 10-K and first through third quarter 2010 Quarterly Reports on SEC Form 10-Q contained false statements about KBI's related-party transactions with the former owners of the LaJobi subsidiary.  ¶¶11-20, 31, 34-40.  Specifically, KBI's March 31, 2011 SEC Form 10-K provided:

> "[T]he Company incorrectly described certain payments as being made by LaJobi entirely to L&J Industries . . . in its quarterly reports during 2010. . . . [W]hile the reported amounts were correct, during such periods, all or a portion of such payments were actually made by LaJobi to individuals in Hong Kong, China, Vietnam and Thailand providing such services, including through an individual based in Hong Kong, rather than to L&J Industries.

¶31.

The damages KBI has suffered as a result of defendants' failure to implement the necessary internal controls are substantial, and are likely to grow worse.  ¶¶29-30, 33, 41-42.  KBI has already incurred millions of dollars in expenses related to its

- 8 -

ongoing internal investigations.  The Company has also revealed that it anticipates incurring aggregate costs of approximately $7 million for customs duties related to its LaJobi operations, and an additional $2.4 million relating to customs duties for its three non-LaJobi subsidiaries "for the years ended 2006 through 2010 and the six months ended June 30, 2011," and may be assessed a penalty of up to 100% of any customs duty owed.  ¶¶3, 29, 41-42; Downs Decl., Ex. A (August 15, 2011 10-Q at 21, 30).  KBI is also likely to incur additional expenses resulting from investigations by U.S. and/or foreign authorities, damages arising from its potential violations of the federal securities laws, other U.S. federal laws, and the local laws of the jurisdictions in which KBI operates, and costs associated with a complex and expensive-to-defend federal securities class action lawsuit filed against the Company.  ¶¶33, 41-42. Finally, KBI will suffer the costs of modifying its business practices and implementing a comprehensive and global anti-dumping compliant importation program as well as any remedial actions resulting from settlements arising from the failure to institute controls at the Company.  ¶42.

## III.   DEFENDANTS' MOTIONS TO DISMISS SHOULD BE DENIED

### A.   Plaintiff Adequately Alleges Demand Futility

#### 1.   Standards for Demand Futility

In deciding a motion to dismiss, "the court is required to accept as true all allegations in the complaint, and all reasonable inferences that can be drawn

therefrom, and to view them in the light most favorable to the non-moving party." *In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117, 127 (D.N.J. 1999); *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 134 (3d Cir. 2004).  Rather than dissecting the Complaint into component parts, the Court must review plaintiff's allegations as a whole and examine the totality of the circumstances.  *Cendant*, 189 F.R.D. at 128-29.

Federal Rule of Civil Procedure 23.1 requires that a shareholder bringing a derivative suit on behalf of a corporation allege that he or she has made a demand on the corporation's board to pursue a corporate claim, or set forth specific factual allegations delineating why such demand would be futile.  *Cendant*, 189 F.R.D. at 127; *Rales v. Blasband*, 634 A.2d 927, 931-33 (Del. 1993).  To assess futility of demand, federal courts look to the substantive law of the applicable state of incorporation.  *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 96 (1991).[5]  Under New Jersey law, a court "must decide 'whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'"  *PSE&G*, 173 N.J. at 279, 282; *accord Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).  If either prong is satisfied, demand is excused.  *Id.*

---

[5]     KBI is a New Jersey corporation and therefore New Jersey law governs its internal affairs.

In cases alleging failure to act, however, demand is excused when the complaint raises a reasonable doubt that a majority of the directors are either disinterested or independent. *Rales*, 634 A.2d at 930, 934. Thus, plaintiff need only allege with particularity facts that would give a reasonable shareholder reason to doubt that a majority of KBI's Board members, at the time this lawsuit was initiated, could consider a demand disinterestedly. *Grimes v. Donald*, 673 A.2d 1207, 1217 n.17 (Del. 1996) (reasonable doubt "is akin to the concept that the stockholder has a 'reasonable belief' that the board lacks independence"). This standard is particularly appropriate in derivative suits because plaintiffs typically have not had the benefit of discovery. *Rales*, 634 A.2d at 934.

Here, plaintiff has raised a reasonable doubt regarding the disinterestedness of the KBI Board members by demonstrating that they are subject to a "substantial likelihood of liability" for breaching their duty of loyalty to KBI. *Ryan*, 918 A.2d at 355 (explaining that directors "have a disabling interest for pre-suit demand purposes when 'the potential for liability is not a mere threat but instead may rise to a substantial likelihood'"); *SFBC*, 495 F. Supp. 2d at 486-87. Indeed, as KBI's fiduciaries, KBI Board members were each required to "act in good faith to ensure" that KBI complied with all of its legal obligations. N.J.S.A §14A:6-14 (directors of a New Jersey corporation are required to "discharge their duties in good faith"); *see also In re Massey Energy Co.*, No. 5430-VCS, 2011 WL 2176479, at *21 (Del. Ch. May 31, 2011) (fiduciaries "must act in good faith to ensure that the corporation tries

- 11 -

to comply with its legal duties"); *Pfeiffer v. Toll*, 989 A.2d 683, 693 (Del. Ch. 2010) ("directors have the statutory power ***and responsibility*** to direct and oversee the business and affairs of the corporation") (emphasis in original).[6] "Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith." *AmSouth*, 911 A.2d at 370.  In other words, where, as here, the plaintiff pleads: (1) that defendants had a known duty to institute controls to ensure that KBI met its payment obligations under U.S. Customs rules and regulations, and KBI's obligations under the local foreign laws in the jurisdictions where it operates; and (2) in the face of that duty they "utterly failed" to institute such controls, the complaint states an actionable *AmSouth* breach of loyalty claim.  *Id*. Because the Complaint alleges sufficient facts supporting a substantial likelihood of defendants' liability and the allegations are far from conclusory, demand on the KBI Board is rendered futile.

---

[6]    *See also Green Party v. Hartz Mt. Indus.*, 164 N.J. 127, 147 (2000) (explaining that the business judgment rule protects business decisions when "made in good faith based on reasonable business knowledge"); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc*., 854 A.2d 121, 131 (Del. Ch. 2004) (explaining that "a fiduciary may not choose to manage an entity in an illegal fashion, even if the fiduciary believes that the illegal activity will result in profits for the entity"); *Kahn ex rel. DeKalb Genetics Corp. v. Roberts*, 679 A.2d 460, 465 (Del. 1996) ("The business judgment rule normally protects all lawful actions of a board of directors, provided they were taken in good faith . . . .").

In the end, when all the facts alleged in the Complaint are viewed collectively as they must be on a motion to dismiss, a plausible inference can be drawn that no U.S. Customs or local foreign law compliant controls were in place at KBI under defendants' watch. *Cendant*, 189 F.R.D. at 127; *see also Matrixx Initiatives, Inc. v. Siracusano*, __ U.S. __, 131 S. Ct. 1309, 1324 (2011) (in deciding a motion to dismiss under a particularity pleading standard, the court must "review 'all the allegations holistically'").  As the United States Supreme Court held in *Matrixx*, "to survive a motion to dismiss, [plaintiff] need only allege 'enough facts to state a claim to relief that is plausible on its face,'" which is what plaintiff has done here.  131 S. Ct. at 1332 n.12.  Defendants' belabored claims that the Complaint lacks particularity does not change this conclusion because KBI admitted to "violation[s] of anti-dumping regulations" and admittedly "violated civil laws and potentially violated criminal laws in [foreign] jurisdictions."  ¶¶27, 32.  Thus, even if the Court could consider this argument at the pleading stage, the facts alleged here are at least, if not more, compelling than "'any opposing inference one could draw from the facts alleged.'" *Matrixx*, 131 S. Ct. at 1324.  Here, taking the allegations in the Complaint as true, as well as the reasonable inferences drawn from those facts, demand on KBI's Board would be futile.

In sum, the Complaint contains detailed facts which, if proven at trial, demonstrate that defendants each face a substantial likelihood of liability for breaching their fiduciary duties. ¶¶11-20.[7] Under these circumstances, there was not a majority of the KBI Board members who could take disinterested action on behalf of KBI at the time this action was commenced.[8] Rather, plaintiff has alleged that at least four, and most likely all, the members of the KBI Board were disabled from exercising disinterested business judgment in responding to a demand to bring this action against themselves. *See, e.g.*, *Lewis v. Curtis*, 671 F.2d 779, 784 (3d. Cir.

---

[7]     Defendants wrongly argue that plaintiff engages in impermissible "group" pleading. KBI Motion at 17; Ind. Defs' Motion at 1, 3. The Complaint's allegations are against all defendants, as KBI's directors and top officers, for each failing to comply with anti-dumping regulations. Plaintiff is not required to add pages upon pages to the Complaint to essentially repeat the same allegations that are applicable to all defendants, describing how they each failed to institute internal controls and acted with the same conscious disregard for their fiduciary duties. *Ryan*, 918 A.2d at 354-55 (finding demand futile against compensation committee upon considering allegations applicable to the committee members as a group); *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 275-78 (S.D.N.Y. 2006) (finding demand futile against audit committee upon considering allegations applicable to the committee members as a collective body). Furthermore, when allegations may apply differently to certain defendants, plaintiff identifies the affected defendants. *See, e.g.*, ¶48.

[8]     At the time this action was commenced, the KBI Board consisted of the following defendants: Bruce G. Crain, Raphael Benaroya, Mario Ciampi, Frederick J. Horowitz, Hugh R. Rovit, Salvatore M. Salibello and Michael Zimmerman. Thus, plaintiff must demonstrate that a majority of the KBI Board, or at least four out of the seven directors, are unable to disinterestedly consider a pre-suit demand. *See Beam v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004) (dismissing demand where "three directors of a six person board are not independent").

- 14 -

1982) (excusing demand where "a majority of the directors have participated in the underlying wrongdoing"); *In re Midlantic Corp. S'holder Litig.*, 758 F. Supp. 226, 238 (D.N.J. 1990) (excusing demand where directors made false statements in violation of the law). As a result, and as further demonstrated below, demand must be excused as futile.

### 2.   The Complaint States a Claim for Breach of Loyalty Under *AmSouth*

This case arises out of defendants' failure to act in the face of known legal obligations to act under anti-dumping statutes, which ultimately has caused, and will cause, KBI to suffer millions of dollars in damages. By mischaracterizing plaintiff's claims in an attempt to convince the Court that the claims are based on an alleged negligent failure to monitor or oversee others (referred to as *Caremark* claims), defendants miss the boat. *See In re Caremark Int'l*, 698 A.2d 959 (Del. Ch. 1996). The Complaint alleges that each defendants' own personal acts, *i.e.*, failing to implement internal controls to ensure that KBI met its payment obligations, breached the duty of loyalty they each owed to the Company and thus they each face a substantial likelihood of liability. ¶¶11-20; *see AmSouth*, 911 A.2d at 370-71.

Plaintiffs' claims are based on *AmSouth* which confirmed directors who "utterly fail[]" to "act in the face of a known duty to act," "breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith." *Id*. at 370. Under *AmSouth*, plaintiff need only plead that: (1) defendants had a known legal duty to

implement internal controls to ensure KBI met its payment obligations under U.S. Customs rules and local foreign laws, and (2) in the face of that duty, defendants "utterly failed" to put the necessary controls in place. *Id.* ("Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith."). This is exactly what plaintiff has pled. *See, e.g.*, ¶¶50-53.

Ultimately, defendants rely heavily on a number of cases involving passive failures to monitor that are not applicable to defendants' own failure to act as alleged here. *See, e.g.*, *King v. Baldino*, 648 F. Supp. 2d 609, 626 (D. Del. 2009), *aff'd*, 409 Fed. Appx. 535 (3d Cir. 2010) (dismissed for failure to make demand where "plaintiff fail[ed] to plead particularized facts demonstrating that the Board was aware of the action of the alleged 'principal wrongdoers' and consciously failed to act in light of that knowledge"); *Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 505 (Del. Ch. 2003) (alleging defendants "failed to oversee the process by which NVIDIA prepared its financial statements"); *Desimone v. Barrows*, 924 A.2d 908, 939 (Del. Ch. 2007) (allegations that internal controls were deficient and directors "'fail[ed] to adequately monitor'" operations). Unlike here, none of these cases involve: (1) defendants' failure to discharge their own fiduciary obligations to act in the face of a known duty to act under applicable anti-dumping laws (as opposed to failing to monitor the activities of others); (2) KBI's admissions that that it violated  "anti-dumping

- 16 -

regulations" and "civil laws and potentially [] criminal laws" in foreign local jurisdictions; or (3) allegations of a complete absence of legally mandated controls to ensure KBI met is payment obligations. *See, e.g.*, ¶¶27, 32.

As discussed below, because the Complaint provides particularized facts which support defendants' substantial likelihood of liability and demand futility under the *AmSouth* pleading standards, defendants' motions should be denied.

> **a.    Defendants Had a Known Duty to Implement Internal Controls to Ensure KBI Met Its Payment Obligations Under U.S. Customs Rules and Local Foreign Laws**

Defendants do not – and cannot – contest that as fiduciaries of KBI they were required to operate the Company in a lawful manner, including following the mandates of the anti-dumping statutes to detect the underpayment of custom's duties. ¶26; N.J.S.A. §14A:6-14 (directors are required to "discharge their duties in good faith"); *see also BVI*, 854 A.2d at 131(explaining that "a fiduciary may not choose to manage an entity in an illegal fashion, even if the fiduciary believes that the illegal activity will result in profits for the entity").  Further, as KBI's directors and top officers, defendants are presumed to understand their obligations and ensure the corporation's lawful operation. *Francis v. United Jersey Bank*, 87 N.J. 15, 20 (1981) ("As a general rule, a director should acquire at least a rudimentary understanding of the business of the corporation."); *Aronson*, 473 A.2d at 812 (directors are presumed to "act[] on an informed basis, in good faith and in the honest belief that the action

- 17 -

taken was in the best interests of the company"); *In re Tyson Foods, Inc. Consol. S'holder Litig.*, No. 1106-CC, 2007 Del. Ch. LEXIS 120, at *10-*11 (Del. Ch. Aug. 15, 2007) ("Loyalty.  Good faith.  Independence.  Candor.  These are words pregnant with obligation.  The Supreme Court did not adorn them with half-hearted adjectives. Directors should not take a seat at the board table prepared to offer only conditional loyalty, tolerable good faith, reasonable disinterest or formalistic candor.").

As a publically traded company with a business model that heavily relies on the importation of foreign goods, it was readily apparent that the nearly 100-year-old anti-dumping provisions applied to KBI and its subsidiaries.  *Francis*, 87 N.J. at 20 ("[A] director should become familiar with the fundamentals of the business in which the corporation is engaged.").  Indeed, KBI's Board consisted of experienced international business professionals.  ¶¶11, 14-20.[9]  As defendants admit, each of the six "outside"

_____

[9]     For example, defendant Crain previously served in various executive capacities for Blyth, Inc., a NYSE-listed multi-channel designer and marketer of home décor and gift products; defendant Benaroya serves or served on the board of directors of Biltmore Capital, United Retail Group, Inc., and Redcats USA; defendant Ciampi has held various executive positions with The Children's Place and additionally serves as a director for Bluefly, Inc. and Delia's, Inc.; defendant Horowitz serves or served as Chairman and CEO of A.P. Deauville and is also a managing partner in American Brand Holdings, LLC, which is the owner of the "Hang Ten" brands; defendant Rovit serves or served as an executive and/or director of Sure Fit Inc., Best Manufacturing, Inc., Royce Hosiery Mills, Inc., Atkins Nutritionals, Inc. and Spectrum Brands Holdings, Inc.; defendant Salibello is the managing partner of Salibello & Broder LLP, a certified public accounting firm, and sits on the board of directors of three closed-end mutual funds; and defendant Zimmerman serves or served as an executive

directors "has impressive credentials independent of the Company," and thus would be expected to know about commonplace international regulations. *See* KBI Motion at 8. Furthermore, KBI imports primarily from countries presenting significant anti-dumping risk factors such as China, Hong Kong, Vietnam and Thailand. ¶¶1, 10, 24. Finally, the Company used third-party agents for quality control and other services at its overseas operations, another factor that necessitated a strong level of controls to ensure proper import duties were paid as required by anti-dumping regulations. ¶¶27, 31.

Considering these allegations in totality, it was obvious that internal controls to ensure that KBI met its payment obligations under U.S. Customs rules and local foreign laws were required at KBI.

### b.   Defendants Failed to Implement Internal Controls at KBI

In March 2011, KBI finally revealed that its business and staffing practices in Asia were insufficient. ¶¶27-32. For example, the Company's March 31, 2011 Form 10-K stated:

> Our LaJobi subsidiary has been selected by U.S. Customs for a "Focused Assessment" of its import practices and procedures, which "Focused Assessment" commenced January 19, 2011. In preparing for the Focused Assessment, which is ongoing, we found certain potential

---

and/or director of Prentice, Delia's, Inc. and The Wetseal, Inc. *See* Downs Decl., Ex. B (KBI Definitive Proxy Statement on SEC Form 14a at 9-12).

issues with respect to LaJobi's import practices.  As a result, our Board
of Directors initiated an investigation . . . .

¶27.  As a result of their investigation, defendants revealed that KBI violated "anti-
dumping regulations" as well as local foreign "civil laws and potentially violated
criminal laws in [foreign] jurisdictions."  ¶¶27, 32.  This damaging admission supports
a plausible inference, if not demonstrates, that KBI lacked the necessary internal
controls required to ensure that its LaJobi subsidiary met its payment obligations, the
same internal controls that defendants' fiduciary duties obligated them to implement.
*See AmSouth*, 911 A.2d at 369 ("'A failure to act in good faith may be
shown . . . where the fiduciary intentionally fails to act in the face of a known duty to
act, demonstrating a conscious disregard for his duties.'"); *see also Matrixx*, 131 S. Ct.
at 1322 n.12 ("[plaintiff] need only allege 'enough facts to state a claim to relief this is
plausible on its face'").

Tellingly, upon discovering its LaJobi violations, the Company terminated the
employment of LaJobi's President, Lawrence Bivona, and LaJobi's Managing
Director of Operations, who KBI claims were responsible for making improper
payments to individuals in Hong Kong, China, Vietnam and Thailand, and failing to
pay customs duties.  ¶¶27-32.  KBI also "discontinued the practices that resulted in the
charge for anticipated anti-dumping duty."  Downs Decl., Ex. A (KBI SEC Form
10-Q, dated August 15, 2011 at 16, 20).  Furthermore, the Company initiated an
additional investigation into customs compliance practices at KBI's non-LaJobi

- 20 -

subsidiaries.  *Id.* at 21, 30.  Although ongoing, this investigation "has identified instances in which these subsidiaries filed incorrect entries and invoices with U.S. Customs as a result of, in the case of Kids Line, incorrect descriptions, classifications and valuations of certain products imported by Kids Line and, in the case of CoCaLo, incorrect classifications of certain products imported by CoCaLo," providing further evidence as to the controls issues permeating the Company.  *Id.*

These allegations support a strong inference that KBI failed to implement controls to detect and deter U.S. Customs violations.  They also highlight the fundamental disconnect between defendants' claims that controls existed and the reality behind their admissions that they violated the anti-dumping provisions of federal law.  In fact, the violations at issue were repeated and massive, regular occurrences that even a rudimentary system of internal controls would have detected and/or prevented.  *See* ¶29; *see also* Downs Decl., Ex. C (KBI SEC Form 10-Q filed May 10, 2011 at 19) ("the Company has recorded charges: (i) of approximately $382,000 (which includes approximately $55,000 of interest) for the quarter ended March 31, 2011; and (ii) of approximately $6,860,000 (which includes approximately $340,000 of interest) for the fourth quarter and year ended December 31, 2010"); Downs Decl., Ex. A (KBI SEC Form 10-Q, filed August 15, 2011 at 21, 30) ("the Company currently estimates that it will incur aggregate costs of approximately $2.4 million (pretax) relating to customs duty for the years ended 2006 through 2010 and the six months ended June 30, 2011").  The complete lack of such a controls system

- 21 -

resulted in KBI's failure to pay approximately $10 million in customs duties to U.S. Customs over a period of at least five years.  ¶29.

Ultimately, the most plausible inference that can be drawn is that KBI failed to implement controls at its overseas operations to ensure that KBI met its payment obligations under U.S. Customs rules and local foreign laws.  Otherwise, KBI would not have been forced to admit to violating anti-dumping provisions and foreign laws to the tune of nearly $10 million in customs duties, possible penalties of another $10 million, and other damages.  ¶29.  Taken as true, these particularized allegations satisfy the second requirement for pleading an *AmSouth* claim that defendants breached their duty of loyalty.

### 3. Demand Is Futile Because Each KBI Board Member Faces a Substantial Likelihood of Liability Resulting from Their Breach of Loyalty

Demand on the KBI Board would be a useless and futile act because each KBI Board member faces a "substantial likelihood" of liability for breaching his fiduciary duty of loyalty.[10]  *SFBC*, 495 F. Supp. 2d at 487; *Rales*, 634 A.2d at 936; ¶¶11-20.

---

[10]    Demand is further excused as to defendant Crain since he cannot claim disinterest due to his primary employment as President and Chief Executive Officer of KBI.  ¶11; *see, e.g.*, *Rale*s, 634 A.2d at 937 (considering the substantial financial stake President and CEO had in maintaining his current offices, the Board had considerable influence over him sufficient to create reasonable doubt that he could be expected to act independently); *In re Cooper Cos. S'holders Derivative Litig.*, No. 12584, 2000 Del. Ch. LEXIS 158, at *17-*21 (Del. Ch. Oct. 31, 2000) (directors who also served as CFO/Treasurer and Vic President/General Counsel could not respond impartially to

- 22 -

Here, the entire KBI Board is liable for a breach of loyalty for failing to implement and maintain the internal controls needed to ensure that KBI met its payment obligations under U.S. Customs rules and local foreign law. ¶¶11-20. As a result of their fiduciary breaches, the entire KBI Board faces a substantial likelihood of personable liability, thereby excusing a pre-suit demand by plaintiff.

The Complaint provides "facts *specific to each director*" sufficient to demonstrate that "at least half of them could not have exercised disinterested business judgment in responding to a demand." *Desimone*, 924 A.2d at 943 (emphasis in original). Each of the KBI Board members served on KBI's Board when the anti-dumping violations occurred with no internal controls in place, and except for defendant Schaefer, each remained on the Board when this case was filed.[11] ¶¶11-20. In addition, during their tenure on the KBI Board, each KBI Board member failed to

---

a demand); *Mizel v. Connelly*, No. 16638, 1999 Del. Ch. LEXIS 157, at *9 (Del. Ch. Aug. 2, 1999).

[11]    Specifically, defendant Crain joined the Board in 2007 (¶11); defendant Benoroya joined the Board in 1993 (¶14); defendant Ciampi joined the Board in 2007(¶15); defendant Horowitz joined the Board in 2006 (¶16); defendant Rovit joined the Board in 2010 (¶17); defendant Salibello joined the Board in 2006 (¶18); defendant Zimmerman joined the Board in 2006 (¶20); and defendant Schaefer served on the Board from 2008 through July 2010 (¶19). Thus, plaintiff must show that at least four of the seven directors (not including Schaefer) could not impartially consider a demand.

- 23 -

act to adopt the necessary internal controls required to ensure compliance with U.S.

Customs rules and local foreign laws.  *Id.*

When faced with a known duty to act, directors may be held liable for damages

arising from their failure to act.  *AmSouth*, 911 A.2d at 370.  Defendants do not – and

cannot – contest that they were aware of the anti-dumping provisions and related U.S.

Customs and foreign local laws or understood their applicability to KBI's importation

activities.  ¶¶11-20, 25-26.  Nor can they reasonably contest that KBI lacked internal

controls when it admittedly violated the anti-dumping provisions and foreign local

laws.  ¶¶27, 32.  Under these circumstances, the KBI Board members each face a

substantial likelihood of liability resulting from their breaches of the fiduciary duty of

loyalty.  Defendants' motions to dismiss therefore cannot be sustained.[12]  *See Pfeiffer*,

---

[12]    Defendants reliance on *Kanter v. Barella*, 489 F.3d 170 (3rd Cir. 2007) is misplaced.  KBI Motion at 17-18.  In *Kanter*, despite the plaintiff's "assertions of misfeasance or non-feasance, the only board actions cited in [plaintiff's] complaint [were] those detailing the board of directors' response when it was informed of the allegedly improper billing scheme." 489 F.3d at 179.  The *Kanter* plaintiff also failed to assert that the directors had "knowledge of alleged wrongdoings."  *Id.* at 180-81.  *Kanter* is distinctly different than here, where plaintiff has alleged that the directors knew that KBI was required to comply with customs regulations but failed to cause the Company to implement and maintain the required controls to ensure KBI complied with these regulations.  As a result, the directors here face a substantial likelihood of liability for failing to discharge their fiduciary obligations to the corporation under the theory set forth in *AmSouth*, and demand is therefore futile.  Similarly, defendants reliance on *Perkins ex rel. Bradley Pharms. Inc. v. Daniel*, No. 06CV01518 (PGS), 2007 WL 4322596 (D.N.J. Dec. 6, 2007), fares no better as the plaintiff in *Perkins* again failed to allege a known duty to act and an associated failure to act in the face of the known duty.

- 24 -

989 A.2d at 690 (excusing demand where the board of directors faces *prima facie* liability for violating the securities laws).

### 4.    Demand Is Further Excused Because the Entire KBI Board Breached Its Fiduciary Duty of Loyalty by Making False Statements to Shareholders

Directors also breach their fiduciary duty of loyalty when they disseminate information to shareholders through public statements that they know are false or incomplete.  *See Daloisio v. Peninsula Land Co.*, 43 N.J. Super. 79, 88 (App. Div. 1956) ("New Jersey law has characterized the directors of a corporation as fiduciaries and has demanded of them the utmost fidelity in their dealings with the corporation and its stockholders."); *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007)) ("even in the absence of a request for shareholder action, shareholders are entitled to honest communication from directors, given with complete candor and in good faith"); *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998) (holding that "directors who knowingly disseminate false information that results in corporate injury or damage" violate their fiduciary duties); *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007) ("Once a board broaches a topic in its disclosures, a duty attaches to provide information that is 'materially complete and unbiased by the omission of material facts.'") (citing *In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421, 448 (Del. Ch. 2002)).  Here, plaintiff has alleged particularized facts establishing that defendants Crain, Paglinco, Benaroya, Ciampi, Horowitz, Rovit, Salibello, Schaefer and Zimmerman each issued, reviewed and approved false and misleading

- 25 -

statements found in KBI's SEC filings which concealed from the public the true nature of LaJobi's business practices. *See* ¶¶11-20, 31, 34-40. Specifically, the Complaint alleges, and defendants admit (*see* ¶¶31-32), that KBI's Annual Report on SEC Form 10-K and the first, second and third quarter 2010 Quarterly Reports on SEC Form 10-Q, contained incorrect information related to certain related-party transactions involving KBI and L&J Industries and failed to disclose the adverse, material non-public facts that they were not in compliance with the Anti-Dumping Act. ¶¶11-20, 31, 34-40.

More troubling, even after defendants claimed to have discovered that it was likely that LaJobi was engaging in illegal conduct, they still failed to disclose the extent of the problem. According to KBI's public filings, the Company discovered issues related to its import practices while preparing for the U.S. Customs' focused assessment which began January 19, 2011. ¶27. KBI, however, did not disclose this information until March 15, 2011 when it filed an SEC Form 8-K, and did not provide detail into the events until the Company filed its March 31, 2011 SEC Form 10-K. ¶¶27-32.

Such behavior is an egregious breach of defendants' fiduciary duties. ¶¶23, 54-57. *Daloisio*, 43 N.J. Super. at 88; *see also Malone*, 722 A.2d at 10 ("It follows *a fortiori* that when directors communicate publicly or directly with shareholders about corporate matters, the *sine qua non* of directors' fiduciary duty to shareholders is honesty."); *Emerald Partners v. Berlin*, 726 A.2d 1215, 1223 (Del. 1999) (directors

- 26 -

are obligated "'to provide a balanced, truthful account of all matters disclosed in . . . communications with shareholders'"). It also raises a reasonable doubt that a majority of the KBI Board would (and could) independently and objectively consider any pre-suit demand to prosecute these claims. Demand on the KBI Board is, therefore, excused.

### B.   Plaintiff's Claims for Relief Are Adequately Pled

Defendants additionally complain that the Complaint fails to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Defendants, however, are incorrect as a matter of law and fact. Plaintiff has pled viable and detailed claims concerning the defendants' misconduct and improper activity which has caused significant and longstanding damage to KBI and its shareholders.

### 1.   Pleading Standard Applicable to Plaintiffs' Claims for Relief

Defendants' attempt to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) also fails. Unlike the particularity requirement for demand futility, notice pleading is all that is required on a motion to dismiss for failure to state a claim. *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 39 (Del. 1996).[13] The standard for

---

[13]   It is well settled that when evaluating a motion to dismiss under Rule 12(b)(6), the Court must "'accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.'" *Kanter*, 489 F.3d at 177 (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). Under Fed. R. Civ. P. 8(a)(2), a complaint must

- 27 -

failure to state a claim is "notably lower than is true in the context of motions to dismiss for failure to make a presuit demand." *Telxon Corp. v. Bogomolny*, 792 A.2d 964, 974 (Del. 2001).

Where, as here, a plaintiff has satisfied the demand futility requirement, an attack on the factual sufficiency of the underlying allegations is generally disregarded. *See In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 285 (Del. Ch. 2003) ("Since the standard under Rule 12(b)(6) is less stringent than the standard under Rule 23.1, a complaint that survives a Rule 23.1 motion to dismiss generally will also survive a Rule 12(b)(6) motion to dismiss, assuming that it otherwise contains sufficient facts to state a cognizable claim."). Federal courts are in accord. *See, e.g.*, *Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 72, 75-76 (D. Mass. 2004) (after finding plaintiff adequately pled demand futility, discussing the much more lenient notice pleading standards under Federal Rules 12 and 8 applicable to plaintiff's claims and stating, "I will not dismiss under Rule 12(b)(6) the claims that survived Rule 23.1"); *In re FirstEnergy S'holder Derivative Litig.*, 320 F. Supp. 2d 621, 627 (N.D. Ohio

---

include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal notice and pleading rules require a complaint provide "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "'enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

- 28 -

2004) (sustaining cause of action on motion to dismiss for failure to state a claim after finding plaintiffs had adequately alleged demand futility).

The Third Circuit's decision in *Tower Air* is particularly instructive here.  In *Tower Air*, the Third Circuit was called upon to determine the relevant federal pleading standards for breach of fiduciary duty claims against the officers and directors of a Delaware corporation.  *In re Tower Air, Inc.*, 416 F.3d 229,  232 (3d Cir. 2005).  The district court dismissed plaintiff's claims based on defendants' argument that a "heightened factual pleading standard" applied to plaintiff's state law claims. *Id*. at 235.  On appeal, the Third Circuit flatly rejected this argument and reversed the district court, holding that "a plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts. . . .  To hold otherwise would be effectively to transform Rule 12(b)(6) motions into multi-purpose summary judgment vehicles. That we will not do."  *Id*. at 237-39.

Accordingly, to survive a 12(b)(6) motion for failing to adequately allege their claims, plaintiffs need only satisfy Rule 8.  *Id*. at 238.  Thus, under the applicable pleading standards, plaintiff's claims for breach of fiduciary duty (*see* §III.A.2.-4, *supra*), gross mismanagement, abuse of control, corporate waste and  unjust enrichment are adequately alleged and must be sustained.

- 29 -

### 2. The Complaint Alleges Claims for Gross Mismanagement and Abuse of Control

Plaintiff has properly asserted causes of action for gross mismanagement and abuse of control against defendants related to their breaches of fiduciary duty.  ¶¶22, 58-63.  It is well settled that separate causes of action lie for gross mismanagement and abuse of control.  *See, e.g.*, *Bodell v. Gen. Gas. & Electric Corp.*, 140 A. 264, 267 (Del. 1927); *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv.*, No. 13389, 1996 Del. Ch. LEXIS 116, at *42-*43 (Del. Ch. Sept. 3, 1996), *aff'd*, 1997 Del. LEXIS 58 (Del. Feb. 11, 1997); *Havens v. Attar*, No. 15134, 1997 Del. Ch. LEXIS 12, at *33 (Del. Ch. Jan. 30, 1997); *Hendry v. Hendry*, No. CIV. A. 12236, 2006 WL 1565254, at *10 (Del. Ch. May 26, 2006).  Accordingly, by establishing breach of fiduciary duty, these claims are also plead.

Under relevant authority, gross mismanagement means "'reckless indifference to or a deliberate disregard of the stockholders.'"  *Rabkin v. Philip A. Hunt Chem. Corp.*, 547 A.2d 963, 970 (Del. Ch. 1986); *see also Cincinnati Bell*, 1996 Del. Ch. LEXIS 116, at *42 (equating "gross mismanagement" with "gross negligence").  Here, plaintiff has alleged facts showing that defendants caused KBI to operate without the internal control systems necessary for compliance with U.S. Customs and local foreign laws.  *See, e.g.*, ¶¶27-33, 59.  Such actions represent gross mismanagement of the Company.  Plaintiff has, therefore, adequately pleaded this cause of action.

- 30 -

In addition, as corporate fiduciaries, defendants have control over the affairs of KBI.  ¶21.  Here, plaintiff alleges that defendants abused that control by ignoring the Company's obligations under U.S. Customs laws and local foreign laws applicable to KBI's business.  *See, e.g.*, ¶¶27-33, 62.  Therefore, plaintiff has sufficiently pleaded that defendants' conduct represents an abuse of their ability to control and influence KBI.

Defendants' motions to dismiss plaintiff's gross mismanagement and abuse of control claims should therefore be denied.

### 3.    The Complaint Alleges a Claim for Waste

Plaintiff has also properly asserted a cause of action for corporate waste against defendants for causing millions of dollars worth of damages to KBI by underpaying customs duties and failing to cause KBI to implement internal controls for compliance with the laws applicable to its business.  *See, e.g.*, ¶¶22, 27-33, 64-66.  To state a claim for corporate waste, the plaintiff must allege "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade."  *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997).  "Most often the claim is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received.  Such a transfer is in effect a gift."  *Id*.

Accordingly, because plaintiff has alleged that KBI received insufficient temporary consideration for harm done to the Company based on defendants' actions,

- 31 -

they have alleged a prima facie waste claim.  Consequently, defendants' motion to dismiss plaintiff's corporate waste claim fails and must be denied.

### 4. The Complaint Alleges a Claim for Unjust Enrichment

Plaintiff additionally adequately sets forth a claim for unjust enrichment against each defendant.  ¶¶67-68.  Here, as demonstrated *supra*, the KBI Board breached its fiduciary duty, *see* §III.A.2.-4, a fact that is alone sufficient at this stage to support a claim for unjust enrichment.  *See Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999) (stating that once the facts alleged were sufficient to allege a breach of fiduciary duty, "it [was] axiomatic" that plaintiffs had also sufficiently pleaded a claim for unjust enrichment); *Weiss v. Swanson*, 948 A.2d 433, 443-44 (Del. Ch. 2008) (finding specific facts as to the alleged timing of option grants given to defendants unnecessary at the motion to dismiss stage).  While in breach of their fiduciary duties, each defendant received salaries, incentive compensation and/or other benefits.  These benefits, however, were unwarranted in light of the fact that had defendants disclosed their failure to implement internal controls at KBI's subsidiaries, they most likely would not have retained their positions and continued to receive those benefits.  *In re MRV Commc'ns, Inc. Deriv. Litig.*, No. CV 08-03800 GAF RCX, 2010 WL 5313442, at *11 (C.D. Cal. Dec. 27, 2010) (for §14(a) claim, finding false proxy statements permitted directors to retain their directorships and "perpetuate the[ir] scheme").  As a result, """the fundamental principles of justice[,] or equity and good

conscience''''' compel restitution, *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999),

because defendants "benefit[ed] at the expense of the [Company] when [defendants']

efforts were insufficient."  *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096,

1105-06 (Del. Ch. 2003).

### C.    The Company's Certificate of Incorporation Cannot Exculpate Defendants from Liability

KBI's exculpation clause and applicable New Jersey law pose no barrier to

liability because plaintiff has pled a breach of the duty of loyalty, which defendants

correctly admit is an un-exculpable claim.  KBI Motion at 24-26; Ind. Defs' Motion at

9-10; KBI Ex. D; N.J.S.A. §14A:2-7(3) (2011).  Here, defendants' conscious refusal

to implement an internal controls system for compliance with U.S. Customs rules and

regulations constitutes an "intentional dereliction of duty" and "a conscious disregard

of one's responsibilities," each of which is "'properly treated as a non-exculpable,

non-indemnifiable violation of the fiduciary duty to act in good faith.'"  *Ryan v.*

*Lyondell Chem. Co.*, No. 3176-VCN, 2008 Del. Ch. LEXIS 125, at *16, *23 (Del. Ch.

Aug. 29, 2008); *see also* N.J.S.A. §14A:2-7(3) (2011) (directors cannot seek

protection for "any breach of duty . . . of loyalty to the corporation or its shareholders"

or "act or omission . . . not in good faith or involving a knowing violation of law").

Because defendants' breach of their duty of loyalty is a non-exculpable claim, they

face a substantial likelihood of liability for their misconduct and thus demand is futile.

*In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1017 (N.D. Cal. 2007) (a

breach of the duty of loyalty is an un-exculpable claim); *In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 809 (7th Cir. 2003) ("[w]ith respect to demand futility based on the directors' conscious inaction, we find that the plaintiffs have sufficiently pleaded allegations, if true, of a breach of the [fiduciary] duty of good faith").

Additionally, the exculpatory provision is an affirmative defense and thus inappropriate to raise on a motion to dismiss. *Emerald Partners v. Berlin*, 787 A.2d 85, 92 n.41 (Del. 2001) ("'If the plaintiff were to establish by proof at trial a *prima facie* case of a loyalty violation, defendants would then have the burden to establish entire fairness.'"); *see also Sanders v. Wang*, No. 16640, 1999 Del. Ch. LEXIS 203, at *35 (Del. Ch. Nov. 8, 1999) (the "use of exculpatory provisions to shield fiduciaries from personal liability presents an affirmative defense not amenable to pre-trial disposition").  It would be improper to conclude as a matter of law that defendants acted in good faith where plaintiff clearly pled acts of bad faith in the Complaint. Therefore, this case should not be dismissed on an alleged exculpatory charter provision.

## IV.   CONCLUSION

Accordingly, defendants' motions to dismiss should be denied.  Alternatively,

plaintiff should be granted leave to amend.

DATED:  September 14, 2011                Respectfully submitted,

                                          BRICKFIELD & DONAHUE
                                          PAUL B. BRICKFIELD


                                          _____
                                                  s/ Paul B. Brickfield
                                               PAUL B. BRICKFIELD

                                          70 Grand Avenue, Suite 102
                                          River Edge, NJ 07661
                                          Telephone:  201/488-7707
                                          201/488-9559 (fax)

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          TRAVIS E. DOWNS III
                                          BENNY C. GOODMAN III
                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)

                                          VANOVERBEKE MICHAUD &
                                            TIMMONY, P.C.
                                          MICHAEL J. VANOVERBEKE
                                          THOMAS C. MICHAUD
                                          79 Alfred Street
                                          Detroit, MI  48201
                                          Telephone:  313/578-1200
                                          313/578-1201 (fax)

                                          Attorneys for Plaintiff

- 35 -

650874_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 14, 2011.


s/ Paul B. Brickfield
PAUL B. BRICKFIELD

BRICKFIELD & DONAHUE
70 Grand Avenue, Suite 102
River Edge, NJ 07661
Telephone:  201/488-7707
201/488-9559 (fax)

E-mail:  pbrickfield@brickdonlaw.com

# Mailing Information for a Case 2:11-cv-02919-JLL -MAH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **PAUL B. BRICKFIELD**
  pbrickfield@brickdonlaw.com

- **ROBERT J. DEL TUFO**
  rdeltufo@skadden.com,jason.skorupka@skadden.com

- **JAY B. KASNER**
  jkasner@skadden.com

- **EDWARD T. KOLE**
  ekole@wilentz.com,etkole68@aol.com,sleandro@wilentz.com

- **JAMES E. TONREY , JR**
  jtonrey@wilentz.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)