**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of KID BRANDS, INC., | Civil Action No.: 11-2919 (JLL) |
| Plaintiff, | |
| v. | |
| BRUCE G. CRAIN, et al., | **OPINION** |
| Defendants | |
| -and- | |
| KID BRANDS, INC., a New Jersey corporation, | |
| Nominal Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court by Nominal Defendant Kid Brands, Inc. ("Kid Brands") Motion to Dismiss Plaintiff shareholder City of Roseville Employees' Retirement System ("Plaintiff")'s Complaint pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6) for failure to state a claim upon which relief can be granted [Docket Entry No. 16]. Defendants Bruce G. Crain, Marc S. Goldfarb, Guy A. Paglinco, Raphael Benaroya, Mario Ciampi, Frederick J. Horowitz, Hugh R. Rovit, Salvatore M. Salibello, John Schaefer and Michael Zimmerman's ("Individual Defendants") join in Kid Brands' motion to dismiss on the same grounds [Docket Entry No. 15]. The Court has considered Defendants' submissions and Plaintiff's opposition thereto, and rules on the papers pursuant to Fed. R. Civ. P. 78. For reasons

1

set forth below, the Court **GRANTS** Defendants' Motions to Dismiss the Complaint without prejudice, with leave to amend the Complaint in conformity with Fed. R. Civ. P. 23.1.

## I. BACKGROUND

Kid Brands is a wholesaler of children's furniture, and is a New Jersey corporation with its principal place of business in New Jersey. (Compl., ¶ 11). At the time this action was commenced, seven of the named Individual Defendants–Bruce G. Crain, Raphael Benaroya, Mario Ciampi, Frederick J. Horowitz, Hugh R. Rovit, Salvatore M. Salibello and Michael Zimmerman–constituted the entire seven-member Board of Directors. Six of the seven members were outside, non-employee directors who did not work for Kid Brands. (Id. at 11-20; Cert. of Robert J. Del Tufo in Supp. of Nominal Def. Kid Brands' Mot. to Dismiss ("Del Tufo Cert."), Ex. C). Defendant John Schaefer was a non-employee, outside director of the Kid Brands Board between February 14, 2008 and July 15, 2010. (Id. at ¶ 19). Three Defendants– Bruce G. Crain, Marc S. Goldfarb and Guy A. Paglinco–served respectively as President, CEO and Director of Kid Brands; Senior Vice President, General Counsel and Corporate Secretary of Kid Brands; and Chief Financial Officer of Kid Brands. (Id. at ¶¶ 11-13). Defendants Goldfarb and Paglinco do not serve on the Kid Brands Board and were officers of the Company during the events in dispute in this case. (Id. at ¶¶ 12-13). LaJobi, Inc. ("LaJobi") is a subsidiary of Kid Brands, and sells cribs, mattresses and nursery furniture imported from China, Hong Kong, Vietnam and Thailand. (Id. at ¶¶ 1, 24).

Plaintiff's Complaint centers on alleged wrongdoing by Kid Brands' subsidiary LaJobi when it violated federal anti-dumping laws by underpaying custom duties due on products imported into the United States from China. (Id. at ¶¶ 2, 27). While Plaintiff does not allege that

the Individual Defendants were involved in the overseas wrongdoing of LaJobi, it asserts six counts against Defendants based on Defendants' alleged breach of their fiduciary duties. Specifically, Plaintiff claims that parent Kid Brands' breached its fiduciary duties when it failed to monitor LaJobi's compliance with relevant laws and regulations governing its domestic and overseas operations and when it made false and misleading statements to the SEC regarding the underlying facts of LaJobi's overseas operations. Plaintiffs four other claims—sounding in gross mismanagement, abuse of control, waste, and unjust enrichment—are incorporated into the alleged breaches of fiduciary duty resulting from the Boards' failure to monitor and properly disclose information. The following is a detailed description of the actions of Kid Brands and the Individual Defendants as stated in the Complaint. The Court assumes their truth for the purpose of this motion.

On March 15, 2011, Kid Brands filed a Form 8-K with the SEC along with an attached press release stating that a Board investigation had revealed "instances at LaJobi in which incorrect import duties were applied on certain wooden furniture imported from vendors in China, resulting in a violation of anti-dumping regulations." (Id. at ¶ 27; Del Tufo Cert., Ex. D). The press release made a number of disclosures including the following facts: upon discovery of potential issues regarding customs duties, the Board initiated an investigation, supervised by a Special Committee of three non-management members of the Board; Kid Brands retained an outside law firm, Skadden, Arps, Slate, Meagher & Flom, LLP, to investigate the payment irregularities in customs duties and independently review the conduct of LaJobi employees; on the basis of the investigation, the Board concluded that there was misconduct by certain LaJobi employees in connection with incorrect payment of duties, including misidentifying the manufacturer and shipper of the products; the Board terminated two high-ranking LaJobi

employees–Larry Bivona (President) and LaJobi's Managing Director of Operations; the investigation regarding the anti-dumping law violations was ongoing. (Del Tufo Cert., Ex. D).

On March 31, 2011, Kid Brands filed a 10-K Form with the SEC reporting that LaJobi had been selected by U.S. Customs in December 2010 for a "Focused Assessment" of its import practices and procedures, and that the Focused Assessment had commenced on January 19, 2011. (Id.; Del Tufo Cert., Ex. E). The 10-K Form further stated that, upon completion of the Special Committee's investigation into LaJobi's import practices, the Committee concluded that "there was misconduct involved on the part of certain LaJobi employees in connection with the incorrect payment of duties." (Id.). The SEC disclosure asserted that, due to that misconduct, Kid Brands would withhold certain earn-out payments owed in connection with the acquisition of LaJobi, previously estimated at approximately $12 to $15 million. The disclosure also reported a charge of $6.86 million, representing the amount of customs payments owed as a result of the misconduct of LaJobi, as well as $340,000 in interest being taken for the cost of sales for the year ending December 2010. Finally, it disclosed that other penalties and interest above the amount of the named charge could still be assessed by U.S. Customs, and that the Company could face a penalty of up to 100% of the customs duty. (Id.).

The Complaint further alleges that Defendants disseminated false and misleading information to Kid Brands' shareholders about Kid Brands' related-party transactions with the former owners of LaJobi and concealed the fact that they did not cause Kid Brands to implement internal controls for compliance with U.S. Customs laws and local foreign laws in the jurisdictions where Kid Brands operates. These concealments and false statements are alleged to have occurred in Kid Brands' 2010 Annual Report on SEC Form 10-K and on first, second and third quarter 2010 Quarterly Reports on SEC Form 10-Q regarding the Company's compliance

with U.S. Customs and/or foreign laws, and/or Kid Brands' related-party transactions with LaJobi's former owners.  (Compl., at ¶ 56).

Plaintiff's Complaint does not indicate what, if any, internal mechanisms were in place to monitor either Kid Brands or its subsidiary LaJobi's compliance with U.S. anti-dumping laws or relevant foreign laws in its jurisdictions of operation.  Neither does the Complaint allege any facts detailing Kid Brands' related-party transactions with LaJobi or the means by which information would have been transferred between parent and subsidiary so as to establish plausible Board knowledge of any misconduct.  In addition, the pleadings are silent with respect to Defendants' actions between December 2010, when they were first notified by U.S. Customs that LaJobi would be the target of a Focused Assessment, and March 15, 2011, when the Board notified the SEC and the public of the underlying misconduct investigated by U.S. Customs. More specifically, the Complaint does not plead facts regarding the Board's failure to disclose the Focused Assessment in its March 15, 2011 disclosure, despite the Board's knowledge of said assessment as revealed in its March 31, 2011 disclosure.  It is thus unclear from the facts pled in the Complaint what red flags, if any, were raised prior to and following the December 2010 Focused Assessment notification to the Board, and whether the U.S. Customs notification itself served as a red flag alerting the Board of misconduct.

## II.  LEGAL STANDARD

Kid Brands is a corporation incorporated in the state of New Jersey, so the substantive law to be applied in this matter governing internal corporate affairs is the law of New Jersey. Fagin v. Gilmartin, 432 F.3d 276, 282 (3d Cir. 2005).  New Jersey has adopted Delaware's demand futility standard and New Jersey courts "generally follow Delaware's pronouncements

on corporate law, and therefore 'an appropriate source of reference is the case law of Delaware.'" In re Merck & Co. Sec., Derivative & ERISA Litig., 493 F.3d 393, 399 (3d Cir. 2007); Seidman v. Clifton Sav. Bank, 2009 N.J. Super. Unpub. LEXIS 2267, at *9 n. 5 (N.J. Super. Ct. App. Div. Aug. 19, 2009) (citation omitted).

Defendants first seek dismissal of Plaintiff's Complaint pursuant to Rule 23.1 establishing pleading requirements for shareholder derivative complaints. Fed. R. Civ. P. 23.1. In order to commence a claim on behalf of a corporation, a shareholder must first demand that the board of directors cause the corporation to pursue the claim.  King v. Baldino, 409 Fed. Appx. 535, 537 (3d Cir. 2010).  Pleading requirements for a shareholder derivative action implicate a heightened pleading standard:

> The complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority, and if necessary, from the shareholders or members, and the reasons for plaintiff's failure to obtain the action or for not making the effort.

Fed. R. Civ. P. 23.1(b)(3); see N.J. R. 4:32-3.  Thus, a shareholder derivative complaint must either plead that such a pre-suit demand has been made or that such demand is excused because it would be "futile." In re PSE & G Shareholder Litig., 801 A.2d 295, 307 (N.J. 2002).

Under New Jersey law, whether a plaintiff has adequately pled demand futility depends on whether a plaintiff has adequately plead with particularity:

> facts creating a reasonable doubt that: (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.

PSE & G, 801 A.2d at 310; see also  King, 409 Fed. Appx. at 537 (quoting Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993)).  Demand futility may be met under the first prong if incumbent directors "face a substantial likelihood of liability" that renders them "personally interested in the outcome of the decision on whether to pursue the claims asserted in the complaint." Stone ex

rel. AmSouth Bancorporation v. Ritter, 911 A.d 362, 367 (Del. 2006). Plaintiff bears the burden

of establishing that demand was futile. PSE & G, 801 A.2d at 312.

    Defendants assert in the alternative that Plaintiff's Complaint should be dismissed under

Fed. R. Civ. P. 12(b)(6).  In reviewing such motions, a district court is "required to accept as true

all factual allegations in the complaint and draw all inferences from the facts alleged in the light

most favorable" to the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir.

2008); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1995, 1965 (2007).  "However, a

court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding

a motion to dismiss."  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  A complaint

survives a Rule 12(b)(6) motion to dismiss if it states a claim to relief that is "plausible on its

face" regarding plaintiff's entitlement to the relief sought.  Twombly, 127 S.Ct. at 1965-66.


### III.  DISCUSSION

    Plaintiff concedes that no demand on the Kid Brands Board was made regarding this

matter.  (Compl., ¶ 46).  However, Plaintiff argues that failure to make a pre-suit demand on the

Board should be excused as futile on two grounds: 1) the Board was not disinterested or

independent as they were responsible for the damages suffered by Kid Brands as a result of

LaJobi's violations and face a "substantial likelihood of liability" resulting from their breaches;

and 2) Defendants' alleged dissemination of false and misleading information violated their duty

of candor, making it impossible for them to consider a demand objectively.  (Pl.'s Opp'n to

Defs.' Mot. to Dismiss, at 26-27).  In addition, Plaintiff argues that demand was futile and should

be excused with respect to Defendant Craig since his primary employment is as CEO of Kid

Brands, and he received over $2.25 million in compensation, including stock options, while Kid

Brands lacked internal controls for compliance with U.S. and foreign laws. Since he financially benefited from the misconduct detailed in the Complaint, he is "disabled from considering a pre-suit demand." (Compl., at ¶ 48).

Defendants contend that Plaintiff's Complaint does not contain sufficiently particularized facts under Rule 23.1 for determining that demand would have been futile since it rests on the "bare assertion" that the Board cannot honestly review the demand due to their potential personal liability for LaJobi's wrongdoing. (Nominal Def. Kid Brands' Mot. to Dismiss, at 14). First, they assert that demand futility cannot be shown in this Circuit solely on the basis that directors would have to sue themselves, citing PSE & G's finding that such arguments are "bootstrap" arguments raising "no legally cognizable issue." (Id.; see PSE & G, 801 A.2d at 309). In addition, Defendants argue that Plaintiff cannot create reasonable doubt concerning their "substantial likelihood of liability" regarding their failure to monitor under the high standard in In re Caremark Int'l, Inc. Derivative Litig., which requires "a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists – [to] establish the lack of good faith that is a necessary condition to liability." 698 A. 2d 959, 971 (Del. Ch. 1996). Finally, Defendants point to additional elements not found in Plaintiff's Complaint which require that directors in a failure to act claim must: (1) have actual knowledge regarding the alleged wrongdoing, making conscious decisions not to monitor or oversee misconduct; and (2) be differentiated with allegations as to specific facts for each Individual Defendant which "single[s] out, among current and past directors, which directors participated in the alleged wrongdoing." Stone, 911 A.2d at 370; Kanter v. Barella, 489 F.3d 170, 180 (3d Cir. 2007). Since Plaintiff's Complaint only asserts conclusory allegations as to the interest and lack of independence of the Defendants under the

above requirements, Defendants claim, Plaintiff fails to meet the heightened pleading standard of Rule 23.1.

## A.     Failure of Oversight Claim

### 1.  Applicable Law on Failure of Oversight

Plaintiff's failure to monitor claim does not challenge a specific affirmative action or decision by the Kid Brands Board, so the Court must apply the demand futility test established by the Delaware Supreme Court in Rales v. Blasband regarding failure to act claims. 634 A.2d 927, 933-34 (Del. 1993). In Rales, the court held that demand is excused in matters involving a failure to act where the complaint raises a reasonable doubt that a majority of the directors are disinterested or independent. Id. at 930; see also In re PSE & G, 801 A.2d at 309 ("[T]he absence of board action . . . makes it impossible to perform the essential inquiry contemplated by Aronson, whether the directors have acted in conformity with the business judgment rule in approving the challenged transactions" (quoting In re Prudential Ins. co. Derivative Litig., 659 A.2d 961, 975 (N.J. Super. Ct. Ch. Div. 1995)). The Rales failure to act test involves a two-prong inquiry requiring courts to examine whether a complaint pleads particularized facts sufficient to demonstrate either

> (1) the underlying conduct being challenged renders any of the directors 'interested' and, if so, whether any of the other directors are compromised in their ability to act independently of the interested directors; or (2) at least half of the directors face a sufficiently substantial threat of personal liability as to the conduct alleged in the complaint to compromise their ability to act impartially on a demand.

Id. at 928 (citing Guttman v. Huang, 823 A.2d 492, 501-3 (Del. Ch. 2003)). Interest exists where a director will receive a personal financial benefit from a transaction or where a corporate decision will have a materially detrimental impact on a director, but not on the corporation or the stockholders, such as a substantial likelihood of liability if a demand is granted. Rales, 634 A.2d

at 936; see Kanter v. Barella, 489 F.3d 170, 178 (3d Cir. 2007).  The relevant test to establish

significant likelihood of liability was clarified in Guttman v. Huang, which stated that a court

must determine "whether the platiniffs have plead facts that show [the] directors face a

sufficiently substantial threat of personal liability to compromise their ability to act impartially

on a demand."  823 A.2d 492, 503 (Del. Ch. 2003).  A director is independent where his

decisionmaking is "based on the corporate merits of the subject before the board rather than

extraneous considerations or influences" such as the control or influence of an interested

director.  Rales, 634 A.2d at 936-37; Aronson, 473 A.2d at 816.  Under PSE & G, the Court must

presume the disinterestedness and independence of the board of directors absent particularized

facts to the contrary, and the plaintiff bears the burden of rebutting that presumption.  PSE & G,

801 A.2d at 309.

    The case which most fully elucidated lack of oversight or failure to act pleading

requirements in shareholder derivative actions is In re Caremark Int'l, Inc. Derivative Litig. 698

A.2d 959 (Del. Ch. 1996).  In Caremark, the Delaware Chancery Court stated that a lack of

oversight claim "is possibly the most difficult theory in corporation law which a plaintiff might

hope to win a judgment."  698 A.2d at 967.  Caremark clearly delineated a narrow range of

actionable failure of oversight claims, finding that lack of good faith is a necessary condition to

director liability, and, as stated above, "only a sustained or systematic failure of oversight . . .

will establish the lack of good faith that is a necessary condition to liability."  Caremark, 698

A.2d at 971.  More specifically, to state a viable Caremark claim and predicate a substantial

likelihood of director liability on it, "a plaintiff must plead the existence of facts suggesting that

the board knew that internal controls were inadequate, that the inadequacies could leave room for

illegal or materially harmful behavior, and that the board chose to do nothing about the control

10

deficiencies that it knew existed." <u>Desimone v. Barrows</u>, 924 A.2d 908, 940 (Del. Ch.
2007)(<u>citing Stone</u>, 911 A.2d at 373).  The scienter requirement in Caremark was also confirmed
in <u>Stone ex rel. AmSouth Bancorporation v. Ritter</u>, which required a "showing that the directors
knew that they were not discharging their fiduciary duties" and "suggesting a conscious decision
to take no action in response to red flags" of wrongdoing within the company.  911 A.2d 362,
370 (Del. 2006)(<u>citing Guttman</u>, 823 A.2d at 506).

 As argued in Defendants' submissions, a Plaintiff's pleadings based on a board's failure
to act and in the absence of pre-suit demand must "differentiate among the directors and the
other defendants" and "plead . . . facts showing that past directors had actual knowledge of the
alleged wrongdoings at the time they were committed."  <u>Prudential</u>, 282 N.J. Super. at 257.  With
regard to scienter, "Delaware courts routinely reject the conclusory allegation that because illegal
behavior occurred, internal controls must have been deficient, and the board must have known
so."  <u>Desimone</u>, 924 A.2d at 940.  Finally, plaintiffs "may not bootstrap allegations of futility
merely by alleging that the directors participated in the challenged transaction or that they would
be reluctant to sue themselves."  <u>Id</u>. at 276.

 2.  Analysis of Plaintiff's Failure of Oversight Claim

 The Court will first consider whether Plaintiff has met its burden of establishing a
reasonable doubt as to the Defendants' disinterestedness, focusing on Plaintiff's claim that
Defendants' substantial likelihood of liability would have made demand on the Board futile.
There is no doubt that the conduct of employees at Kid Brands' subsidiary, LaJobi, is under
scrutiny for legal violations under U.S. Customs law and potentially under foreign laws in its
jurisdictions of operation.  Accepting Plaintiff's factual allegations as true, and relying on
Defendants' voluntary disclosures in SEC filings, the Kid Brands Board must have been made

aware of irregularities in customs duties payments on the part of LaJobi since at least December 2010 when the Company was notified that it was selected for a Focused Assessment by U.S. Customs. In its failure of oversight claim, the Complaint focuses exclusively on the months between December 2010 and March 2011 in documenting alleged breaches and misconduct on the part of the Board. The Complaint concedes that the Board did take actions to address the misconduct: it hired an outside law firm to set up an independent investigation, it established a Special Committee to conduct internal investigations, it took disciplinary actions by terminating the employment of top LaJobi officers, and publicly disclosed to shareholders and the public the nature of the misconduct and the extent of losses it suffered as a result of that misconduct. These actions are almost identical to those taken by the MedQuist, Inc. Board in <u>Kanter v. Barella,</u> responses which in that case the Third Circuit held to be appropriate and "appear to be precisely the types of actions an independent board exercising valid business judgment should take when made aware of a serious problem. By themselves they do not create reasonable doubt as to the validity of its judgment." 489 F.3d at 181.

To rebut the presumption that these actions by the Board are sufficient, however, Plaintiff's Complaint fails to plead with particularity any specific facts about deficiencies in internal monitoring mechanisms at Kid Brands and LaJobi, making only conclusory statements that, because violations of law occurred, "Defendants . . . did not have [Kid Brands] implement an internal controls system for compliance with U.S. Customs laws and the local foreign laws in the jurisdictions where [Kid Brands] operates," and that "Defendants' failures to implement internal controls at [Kid Brands'] overseas operations were conscious, and contrary to their duty." (Compl., at ¶ 52).

Further, Plaintiff fails to proved any facts beyond the occurrence of the customs duties'

violations that indicate a "sustained or systematic" failure of oversight. In evaluating such

sustained or systematic failures under the Caremark standard, courts in this Circuit have looked

to a series of indicators that point to an utter collapse of monitoring mechanisms. In CCWIPP v.

Alden, the Delaware Chancery Court found that, since Plaintiff pled facts detailing only one

concrete incident where it was possible to find that a company's policies were not followed, a

sustained or systematic failure to monitor could not be shown, particularly since the complaint

did not "describe how Defendants, as directors, interacted with [company] personnel, how much

time they spent, or did not spend, overseeing the activities of [company] personnel, etc." 2006

Del. Ch. LEXIS 42, at •30-31 (Del. Ch., February 22, 2006). In In re SFBC Int'l, Inc. Sec. &

Deriv. Litig., a shareholder derivative suit arising from alleged mismanagement by a clinical

testing, development and consulting company servicing pharmaceutical and medical device

companies, the District of New Jersey found that demand was futile where the primary business

of the company was "routinely conducted in an egregiously unethical manner," where violations

were the company's "operating procedure" rather than "isolated or rare occurrences," and where

"endemic mismanagement" was evidenced by the raising of "plenty of red flags concerning the

improper and even possibly illegal practices in which the company was engaged." 495 F. Supp.

2d 477, 485 (D.N.J. 2007). The Court also found the misconduct was "related to the core of [the

company's] business. . . . This was not merely decentralized activity by employees of a far-flung

enterprise of the company, as was the case in Caremark." Id. at 485-86. The District of New

Jersey also recently considered demand excuse in the context of subsidiaries' misconduct in a

shareholder derivative claim based on the alleged substantial likelihood of liability of the Board.

In re Johnson & Johnson Derivative Litigation, 2011 U.S. Dist. LEXIS 112292 (D.N.J., Sept. 29,

2011).  In that case, plaintiffs based their <u>Caremark</u> claim on defendant directors' alleged failure to prevent various illegal activities from occurring at several of the company's subsidiaries.  <u>Id.</u>, at *1-2.  The red flags cited in that case were FDA warning letters, an FDA report, <u>qui tam</u> actions, a criminal plea, a settlement agreement with the U.S. Department of Justice ("DOJ"), and a DOJ subpoena, all alleged to point to corporate misconduct with respect to product recalls, off-label drug marketing and illegal kick-backs.  <u>Id.</u> at *7.  Despite the multitude of red flags, the court found that the plaintiffs' complaint could not link the reported information regarding subsidiaries' misconduct to the board of directors as required by the heightened pleading standard, namely, that particularized facts showed specifically the *board*'s bad faith in consciously failing to prevent violations.  <u>Id.</u> at *28.

        In this case, Plaintiff only alleges a single red flag alerting the Board of possible misconduct by LaJobi: the U.S. Customs decision to do a Focused Assessment of its subsidiary. In response, the Complaint itself concedes that the Board took a series of actions deemed by law in this Circuit to demonstrate appropriate exercises of business judgment.  Unlike <u>SFBC</u>, the alleged violations of U.S. and foreign law are not alleged to be standard operating procedure or endemic to the larger operations of Kid Brands, nor are they pled to be at the core of Kid Brands' business rather than decentralized activity of employees in a distant subsidiary.  Even where many red flags are raised regarding subsidiary misconduct, a demand futility claim must fail where no relationship or link can be inferred from facts pled indicating that the board itself knew of the misconduct or inadequacies in internal control mechanisms, knew that illegal or harmful behavior could result from the inadequacies and consciously did nothing to control the deficiencies.

This brings the Court to a second fundamental point: Plaintiff does not present particularized facts regarding Defendants' actual knowledge of wrongdoing. Specifically, the Complaint is devoid of factual allegations regarding who approved the incorrect payment of customs duties and whether any of the directors knew that the appropriate customs duties under federal anti-dumping law were not being paid. Further, no facts are pled regarding any meetings that occurred between members of the Board and employees of LaJobi or those who knew of the misconduct of LaJobi employees where any misconduct was reviewed or discussed. The Complaint also fails to plead facts that suggest an inference that the directors or officers knew of the unpaid customs duties, and intended them to be a form of hidden bonus to be concealed from regulatory authorities and from Kid Brands' stockholders. This Court thus cannot make a rational inference based on the facts pled that any members of the Kid Brands Board, much less a majority, had actual knowledge about the violative activity of LaJobi's employees, and Plaintiff has failed to create a reasonable doubt as to the Kid Brands Board's ability to impartially consider a demand as to this claim.

Beyond Plaintiff's failure to sufficiently plead the Board's likely subjection to suit based on systematic failure to monitor and actual knowledge of misconduct, Plaintiff has also not set forth facts or circumstances demonstrating that a majority of the Board, or the sway of "interested" directors makes it such that the Board should be construed as personally interested in the outcome of the decision on whether to pursue the claims asserted in the Complaint. Demand futility has been found in this Circuit regarding "interested" directors where: 1) directors benefited through special compensation packages and grants of significant fees resulting from a merger with a company that had significantly overstated its income, In re Cendant Corp. Deriv. Action Litig., 189 F.R.D. 117, 129 (D.N.J. 1999); and 2) half of the

15

members of the Board of Directors were on a compensation committee which approved backdating options that benefited those directors and an additional member accepted those options, Ryan v. Gifford, 918 A.2d 341 (Del. Ch. 2007). These cases indicate that interest can be found where directors have made decisions which directly mandate or approve wrongdoing, and where directors financially benefit from participation or approval in the challenged decision. This is not the case here, and this Court thus has no basis to conclude the majority of the Board were so invested in activities from which they benefited that they could not exercise independent judgment regarding a shareholder's demand.

Plaintiff's Complaint fails to particularly plead: a) how the directors "interest" would prevent objective assessment of a demand request; and b) how each director, as differentiated from the others, has such an interest. With regard to the first issue, the nature of the directors' interest, Plaintiff makes two arguments. One argument, discussed above, is that at least half of the directors face a substantial likelihood of liability. The other argument involves alleged financial benefits received from the alleged wrongdoing not shared by the shareholders. Plaintiff's Complaint however only alleges that one member of the Board, Defendant Crain, was so interested, receiving "$2.25 million in compensation, including stock options, while [Kid Brands] lacked internal controls for compliance with the U.S. Customs laws and the local foreign laws in the jurisdictions where [it] operations." (Compl., at ¶ 48). Plaintiff neither alleges how this compensation relates to the misconduct of LaJobi's employees, nor addresses the influence of Defendant Crain on the rest of the Board with respect to how his financial interest would affect a decision on whether to grant a shareholder's demand.

The Complaint is deeply deficient with regard to the second issue requiring differentiation between Defendants under Prudential. The only descriptions of alleged activities

16

by any individual member of the Board or a Kid Brands officer is made in the "Parties" section

of the Complaint, and the exclusive difference between Defendants listed is their job title and

years of service.  (See  Compl., at ¶¶ 10-20).  The rest of the alleged facts pertaining to each

Defendant in their respective numbered paragraphs is identical regarding conclusory allegations

of their knowledge "at all relevant times," that Kid Brands was subject to governing law, rules

and regulations, that Kid Brands failed to implement internal controls, and that the individual

Defendant owed duties to the corporation which he breached in failing to oversee the company

and making false statements to the SEC and Kid Brands' shareholders.  The rest of the

Complaint invariably refers to "KBI" (Kid Brands) and "the board of directors," providing no

facts as to the degree of individual involvement, approval, participation, acquiescence or benefit

from the alleged wrongdoing.

The central issue for the purposes of Plaintiff's motion is whether the Kid Brands Board

"should be divested of its authority to address th[e alleged] misconduct" based on Plaintiff

having overcome its burden of demonstrating reasonable doubt that the Board could exercise an

independent and disinterested business judgment in responding to a demand of its claims.

Desimone, 924 A.2d at 914.  Since the factual allegations as pled do not show that a majority of

the Board faces a substantial likelihood of liability under Caremark and subsequent binding law,

fails to sufficiently allege actual knowledge of the directors or to differentiate between them

regarding their participation in the wrongdoing, Plaintiff's Complaint falls short of the

heightened pleading standard required to excuse demand.

**B.**       **Breach of Fiduciary Duty of Candor: Alleged False and Misleading Statements**

Plaintiff alleges that the Board issued false and misleading statements about LaJobi in the

Company's Annual Report filed on March 26, 2010 in their 10-K SEC Form, and in the first-,

second-, and third-quarter 2010 Quarterly Reports on their 10-Q SEC Forms. (Compl., at ¶34). Particularly, the reports submitted to the SEC are alleged to contain incorrect information related to certain related-party transactions involving Kid Brands and L&J Industries, a company established in Asia by Lawrence Bivona, the President of LaJobi, along with various family members, to "provide quality control services to LaJobi for goods being shipped from Asian ports." (Id. at ¶ 35). In its March 26, 2010 SEC Form 10-K, Kid Brands disclosed the costs incurred by LaJobi for L&J Industries' services, and continued to so disclose said costs in its April 30, 2010 SEC Form 10-K/A, May 5, 2010 SEC Form 10-Q, August 4, 2010 SEC Form 10-Q and November 3, 2010 SEC Form 10-Q. (Id. at ¶ 36-39). Plaintiff claims that these submissions to the SEC violated the Defendants' duty of candor since it made statements "without disclosing the adverse, material non-public facts about the LaJobi affair." (Id. at ¶ 40).

Defendants argue that Plaintiff does not plead with particularity substantial likelihood of liability with respect to the misstatement claims so as to excuse Plaintiff's failure to make pre-suit demand. Unlike Plaintiff's lack of monitoring claim, the misstatements to the SEC constituted an affirmative action by the Board rather than a failure to act, so Plaintiff may satisfy demand futility by pleading facts creating a reasonable doubt that either (1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. PSE & G, 801 A.2d at 309. Defendants contend that Plaintiff can do neither.

First, Defendants claim that Plaintiff fails to sufficiently plead facts showing that Defendants knew of the underlying facts purported to have been withheld as required under this Circuit's law. See In re Prudential, 659 A.2d at 971; Pfeffer v. Redstone, 965 A.2d 676, 686 (Del. 2009)(finding that, if the directors did not know or have reason to know the allegedly

missing facts, then they could not be in a position to disclose them). Without stating facts

pointing to Defendant's knowledge of LaJobi's transactions with L&J Industries, Defendants

assert, Plaintiff cannot show a substantial likelihood of liability under <u>Kanter</u>.

Second, Defendants argue that Plaintiff fails to allege with particularity facts raising

reasonable doubt as to the valid exercise of business judgment on the part of the Board with

respect to the challenged board action. Establishing demand futility under this prong involves a

"heavy burden" on the part of a plaintiff since that prong is "directed to extreme cases in which

despite the appearance of independence and disinterest a decision is so extreme or curious as to

itself raise a legitimate ground to justify further inquiry and judicial review." <u>Highland Legacy</u>

<u>Ltd. v. Singer</u>, No. Civ. A. 1566-N, 2006 Del. Ch. LEXIS 55 (Del. Ch. Mar. 17, 2006). The

business judgment rule is a "presumption that in making a business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interests of the company." <u>In re Smurfit-Stone Container Corp. S'holder</u>

<u>Litig.</u>, 2011 Del. Ch. LEXIS 79, at *41 (Del. Ch. May 20, 2011). Where a majority of the

directors are independent or outside directors, the business judgment rule's presumption of good

faith is heightened. <u>Hokanson v. Petty</u>, 2008 Del. Ch. LEXIS 182, at *25 n. 34 (Del. Ch. Dec.

10, 2008). Defendants assert that, since Plaintiff does not offer particularized facts suggesting

that the Board even knew of the LaJobi scheme until it instituted an independent investigation of

its subsidiary's practices, Plaintiff fails to carry the heavy burden of establishing demand futility

under the second prong.

This Court agrees that Plaintiff has failed to create reasonable doubt as to the Board's

disinterestedness, independence, and valid business judgment for the purposes of excusing

demand on its disclosure claims. Plaintiff's Complaint does not allege any facts at all regarding

the Board's knowledge of any wrongdoing by LaJobi until December 2010, when the company's

subsidiary was targeted for a Focused Assessment. The only facts alleged in the Complaint even

dealing with the period surrounding the relevant SEC disclosures by Kid Brands, all prior to

December 2010, are the filings of the disclosures themselves. Thus, Plaintiff's allegations that

Defendants knew of misconduct but failed to disclose it is entirely conclusory, and Plaintiff has

not met the required heightened pleading standard that either Defendants face a substantial

likelihood of liability to make demand futile or that they failed to exercise valid business

judgment in making the disclosures that they made.

For these reasons, this Court finds that Plaintiff has failed to satisfy the pleading

requirements of Fed. R. Civ. P. 23.1 as required to bring a derivative action in the absence of

pre-suit demand. On this ground alone, Defendants' Motions to Dismiss is granted without

prejudice to Plaintiff's amending its Complaint in accordance with the strictures of this Opinion.

Since the Court does not find that Plaintiff met the pleading standard required to bring a

shareholder derivative claim, it need not consider whether Plaintiff states a claim on which relief

can be granted under Fed. R. Civ. P. 12(b)(6), nor need it discuss whether the exculpatory

provision of Kid Brands' certificate of incorporation exonerates the Individual Defendants from

liability. Finally, since Plaintiff's claims regarding Defendants' gross mismanagement (based on

Kid Brands failure to operate without necessary internal controls), abuse of control (based on

Defendants' ignoring Kid Brands' obligations under U.S. Customs laws and local foreign laws),

waste (based on Defendants causing millions of dollars worth of damages to Kid Brands by

underpaying customs duties and failing to cause Kid Brands to implement internal controls) and

unjust enrichment (based on Defendants' breach of fiduciary duty, receipt of salaries, incentive

compensation and other benefits unwarranted due to failure to implement internal controls) are

premised on its breach of fiduciary duty claim, they must also be dismissed without prejudice for failure to adequately plead particularized facts regarding Defendants' alleged breach of their fiduciary duties.  See In re Citigroup Inc. S'holder Derivative Litig., 964 A.2d 106, 114 n. 6 (Del. Ch. 2009)(stating that Delaware law does not recognize an independent cause of action against corporate directors and officers for reckless and gross mismanagement but rather treats such claims as claims for breach of fiduciary duty); In re ALH Holdings, LLC, 675 F. Supp. 2d 462, 482-83 (D. Del. 2009)(categorizing abuse of control as a breach of directors' duty of loyalty); Sample v. Morgan, 914 A.2d 647, 669 (Del. Ch. 2007)(finding that "claims of waste are sometimes misunderstood as being founded on something other than a breach of fiduciary duty," and "conceived more realistically, the doctrine of waste is a residual protection for stockholders that polices the outer boundaries of the broad field of discretion afforded directors by the business judgment rule"); Seidman v. Clifton Savs. Bank, S.L.A., 14 A.2d 36, 46 (N.J. 2011)(finding that corporate waste is actionable only based on board action, not board inaction, in authorizing an exchange that is so one-sided that no sound business judgment could be presumed); In re Bank of Am. Corp. Secs, 757 F. Supp. 2d 260, 342 (S.D.N.Y. 2010)(dismissing a claim for unjust enrichment where plaintiffs did not allege director benefit from unlawful conduct in their derivative complaint).

## C.     Nature of Dismissal

While this Court concludes that Plaintiff's allegations do not satisfy the heightened pleading standard under Rule 23.1, it must determine whether Plaintiff's Complaint should be dismissed with or without prejudice.  In King v. VeriFone Holdings, Inc., the Delaware Supreme Court made clear that granting a motion to dismiss without prejudice to the plaintiff's leave to amend a complaint has legal and policy justifications under Delaware law.  12 A.3d 1140 (Del.

21

2011).  In its recent ruling in <u>In re Johnson & Johnson Derivative Litig.</u>, the District of New

Jersey followed the Delaware Supreme Court in dismissing a shareholder derivative action

without prejudice, giving plaintiffs the opportunity to pursue a books and record action in state

court to buttress their insufficient allegations under Rule 23.1.  2011 U.S. Dist. LEXIS 112292,

at *94.  Other courts have also followed this approach.  <u>See</u> <u>In re Verifone</u>, No. C 07-06347,

2009 U.S. Dist. LEXIS 44138 (N.D.Cal. May 26, 2009)(dismissing a shareholder derivative

complaint without prejudice to allow plaintiffs to inspect books and records pursuant to Section

220 and file an amended complaint).

     Dismissal without prejudice is appropriate in this case because while Plaintiff did not

state with particularity facts creating reasonable doubt as to Defendant's impartiality with regard

to demand, but Plaintiff nevertheless did point to flagrant violations on the part of Kid Brands'

subsidiary, the Company's failure to act, lags in disclosure surrounding U.S. Customs

notification to the Company of potential violations, and Defendant's awareness through SEC

disclosures of various elements of LaJobi's transactions with L&J Industries.  New Jersey law

allows multiple avenues for supplementation of deficient facts, supporting the efficacy of

allowing plaintiffs in shareholder derivative actions leave to amend.  <u>See</u> N.J.S.A. 14A:5-28

(allowing shareholders of New Jersey corporations to bring a books and records action to obtain

copies of board minutes and other corporate records); <u>Cain v. Merck & Co., Inc.</u>, 415 N.J.Super.

319, 331-35 (App. Div. 2010)(allowing a shareholder to petition a New Jersey court and seek

inspection of records related to a pending law suit).  This Court thus finds it to be in the interest

of justice to allow Plaintiff's amendment of its complaint under Fed. R. Civ. P. 15(a).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff has failed to satisfy Rule 23.1 and grants Defendants' Motions to Dismiss without Prejudice.  Plaintiff is granted leave to amend its complaint in a manner consistent with the strictures of this Opinion.  An appropriate order accompanies this Opinion.


DATED: October 24, 2011

Jose L. Linares
United States District Judge