<u>NOT FOR PUBLICATION</u>                                    **FILED UNDER SEAL**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, derivatively on behalf of Kid Brands, Inc., <br><br> Plaintiff, <br><br> v. <br><br> BRUCE G. CRAIN, et al., <br><br> Defendants, <br> and <br><br> KID BRANDS, INC., <br><br> Nominal Defendant. | Civil Action No. 11-2919 (JLL) <br><br><br> **OPINION** |

**LINARES,** District Judge**.**

Shareholders bring this derivative suit on behalf of Kid Brands., Inc. ("Kid Brands"), alleging, *inter alia*, that the Defendant officers and directors breached their fiduciary duties by: (a) allowing Kid Brands to engage in improper customs and payment practices, and (b) allowing Kid Brands to make improper statements in their public filings concerning its customs and payments practices.   Nominal Defendant Kid Brands, Inc. has filed a motion to dismiss Plaintiff's Amended Complaint  pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6) for failure to state a claim upon which relief can be granted [Docket Entry No. 92].  Defendants Raphael Benaroya, Mario Ciampi, Bruce G. Crain, Marc S. Goldfarb, Frederick J. Horowitz, Guy A. Paglinco, Hugh R. Rovit, Salvatore M. Salibello, John Schaefer and Michael Zimmerman ("Individual Defendants") join in Kid Brands' motion to dismiss and raise their own

1

separate arguments in support of dismissal [Docket Entry No. 94].  The Court has considered Defendants' submissions and Plaintiff's opposition thereto, and rules on the papers pursuant to Fed. R. Civ. P. 78.  For reasons set forth below, the Court grants Defendants' motions and dismisses the Amended Complaint with prejudice.

## I.      Factual and Procedural Background

Kid Brands is a wholesaler of children's furniture, and is a New Jersey corporation with its principal place of business in New Jersey.  (Am. Compl., ¶ 13).  Defendants are current and former executive officers: Raphael Benaroya, Bruce G. Crain, Marc S. Goldfarb and Guy A. Paglinco; and current and former directors: Mario Ciampi, Frederick J. Horowitz, Hugh R. Rovit, Salvatore M. Salibello, Michael Zimmerman and John Schaefer.   (Am. Compl. at 1-2).  Defendant Raphael Benaroya is the Chairman of the Board and has been a director of Kid Brands since 1993. (Compl., ¶ 14).  Defendant Mario Ciampi has been a director of Kid Brands since 2007. (Id., ¶ 16).  Defendant Frederick J. Horowitz has been a director of Kid Brands since 2006. (*Id*., ¶ 18).  Defendant Hugh R. Rovit has been a director of Kid Brands since 2010.  (*Id*., ¶ 20).  Defendant Salvatore M. Salibello has been a director of Kid Brands since 2006.  (*Id*., ¶ 22).  Defendant Michael Zimmerman has been a director of Kid Brands since 2006.  (*Id*., ¶ 24).  Defendant John Schaefer was a director of Kid Brands from 2008 until his resignation from the Board in July 2010. (*Id*., ¶ 26).  Defendant Marc S. Goldfarb has been Senior Vice President, General Counsel and Corporate Secretary of Kid Brands since 2005. (*Id*., ¶ 28).  Defendant Guy A. Paglinco has been Vice President – Corporate Controller of Kid Brands since 2006 and was promoted to Vice President and Chief Accounting Officer of Kid Brands as of November 2007, Interim Chief Financial Officer as of January 2009, and Chief Financial Officer as of August

2009. (*Id.*, ¶ 30).  Defendant Bruce Crain was the President, CEO and director of Kid Brands from 2007 until September 2011.  (*Id.*, ¶ 32).  LaJobi, Inc. ("LaJobi") is a subsidiary of Kid Brands, and sells cribs, mattresses and nursery furniture imported from China, Hong Kong, Vietnam and Thailand.  (*Id.* at ¶¶ 1, 58).

Plaintiff's Amended Complaint centers on alleged wrongdoing on the part of Kid Brands' subsidiary LaJobi in violating federal anti-dumping laws by underpaying custom duties due on products imported into the United States from China.  (*Id.* at ¶ 2).  While Plaintiff does not allege that the Individual Defendants were involved in the overseas wrongdoing of LaJobi, Plaintiff claims that parent Kid Brands breached its fiduciary duties when it: (a) failed to monitor LaJobi's compliance with relevant laws and regulations governing its domestic and overseas operations, and (b) made false and misleading statements to the SEC regarding the underlying facts of LaJobi's overseas operations.  Plaintiff's three other claims—gross mismanagement, corporate waste, and unjust enrichment—are incorporated into the alleged breaches of fiduciary duty resulting from the Boards' failure to monitor and properly disclose information.  The following is a detailed description of the actions of Kid Brands and the Individual Defendants as stated in the Amended Complaint.  The Court assumes their truth for the purpose of this motion.

According to the Amended Complaint, from its acquisition in 2008 until 2010, LaJobi engaged in a routine practice of avoiding payment of anti-dumping custom duties on products imported from China in order to reduce costs.  (*Id.*, ¶ 60).  This routine practice was openly discussed by executives and other employees at LaJobi.  (*Id.*, ¶¶ 60-72).  The Amended Complaint alleges, generally, that the Individual Defendants and the Board of Directors ("Board") breached their fiduciary duties by "knowing about Kid Brands' failure to pay customs

duties and failing to rectify the misconduct and/or by failing to implement internal controls that would reveal Kid Brands' failure to pay customs duties." (*Id.*, ¶ 93). For example, the Amended Complaint alleges that, at the Board meeting on May 17, 2010, Defendants Benaroya, Ciampi, Crain, Horowitz, Salibello, Schaefer, Zimmerman, Goldfarb and Paglinco met with executives at LaJobi and that LaJobi made a presentation on its business and practices. Although the Board purportedly asked various questions, the minutes for this meeting do not reflect any discussion of customs practices at any of Kid Brands' subsidiaries, including but not limited to LaJobi. (*Id.*, ¶ 94). Similarly, at another Board meeting on July 15, 2010, Defendants Benaroya, Ciampi, Crain, Horowitz, Rovit, Salibello, Zimmerman, Goldfarb and Paglinco met with executives at LaJobi. Although LaJobi provided an update on its business during this meeting, there was no mention in the minutes of this meeting of LaJobi's customs practices. (*Id.*, ¶ 95). A similar meeting between the same individuals was held on December 16, 2010; despite an extensive presentation by LaJobi's then-President, there is no mention in the minutes for this meeting of any discussion regarding customs practices at LaJobi. (*Id.*, ¶ 96).

In late December 2010, U.S. Customs selected LaJobi for a "Focused Assessment" of its import practices and procedures to begin on January 19, 2011. (*Id.*, ¶ 73). The Executive Committee of Kid Brands met on January 26, 2011 to discuss the scheduled assessment. The entire Board of Directors, in turn, met in mid-February 2011 to discuss same. (*Id.*, ¶ 74). According to the February 14, 2011 Board meeting minutes, Defendants Benaroya and Crain informed the Board of a "potential customs duty issue at LaJobi and then provided a brief overview of the status of management's investigation of the potential LaJobi customs duty matter." (*Id.*, ¶ 76).

After receiving notice that U.S. Customs was investigating the Company, the Board launched internal investigations into Kid Brands' customs and payment practices, one of which focused on internal controls at Kid Brands. (*Id*., ¶ 7).  In doing so, the Board retained the services of Ernst & Young LLP ("E&Y") and KPMG LLP ("KPMG").  Their respective audits revealed that Kid Brands' internal controls were generally deficient. (*Id*.).

On March 1, 2011, the Board initiated a separate investigation into the employees and practices at LaJobi, supervised by a special committee of three non-management members of the Board (Defendants Benaroya, Ciampi and Salibello, hereinafter the "Special Committee").  (*Id*., ¶ 78).  The Special Committee hired outside counsel—Skadden, Arps, Slate, Meagher & Flom, LLP—to conduct that investigation. (*Id*.).

According to Kid Brands' annual report for the fiscal year 2010, the Special Committee investigation "found instances at LaJobi in which incorrect import duties were applied on certain wood furniture imported from vendors in the [People's Republic of China], resulting in a violation of anti-dumping regulations." (*Id*., ¶ 79).  According to the same annual report, from this investigation, "the Board concluded that there was misconduct involved on the part of certain LaJobi employees in connection with the incorrect payment of duties, including misidentifying the manufacturer and shipper of products." (*Id*.).  As a result, Kid Brands terminated the employment of LaJobi's then-President, Lawrence Bivona, and its then-Managing Director of operations, John Sandiford. (*Id*.).

The Complaint further alleges that Defendants disseminated false and misleading information to Kid Brands' shareholders about Kid Brands' related-party transactions with the former owners of LaJobi and concealed the fact that they did not cause Kid Brands to implement internal controls for compliance with U.S. Customs laws and local foreign laws in the

5

jurisdictions where Kid Brands operates.  In particular, the Amended Complaint alleges that Defendants breached their fiduciary duty of loyalty (and candor) owed to Kid Brands by making false and misleading statements to Kid Brands shareholders in the Company's quarterly and annual reports on 2010 SEC Forms 10-K and 10-Q.  According to Plaintiff, these shareholder reports contained incorrect information related to Kid Brands customs and payment practices as well as its financial statements.  (*Id*., ¶ 111).  In this regard, on March 15, 2011, Kid Brands filed a Form 8-K with the SEC stating that a Board investigation had revealed "instances at LaJobi in which incorrect import duties were applied on certain wooden furniture imported from vendors in China, resulting in a violation of anti-dumping regulations."  (*Id.,* ¶¶ 2, 106).  Kid Brands also admitted in its annual report on Form 10-K for the year ending on December 31, 2011 that internal controls over financing reporting (and, as a result, its disclosure controls and procedures) were not effective as of December 31, 2010.  (*Id*., ¶ 113).

Thus, according to the Plaintiff, the officers' and directors' failure to adequately monitor LaJobi's compliance with relevant laws and regulations governing its domestic and overseas operations constituted a breach of their fiduciary duties to Kid Brands and resulted in substantial losses and potential future losses to Kid Brands, including but not limited to $7 million in past customs duties and a penalty of up to 100% of that amount.  (*Id*., ¶ 3).

Plaintiff's original complaint was filed in May 2011.  On October 24, 2011, this Court granted Defendants' motion to dismiss and dismissed Plaintiff's complaint without prejudice, finding that Plaintiff had failed to satisfy the pleading requirements of Fed. R. Civ. P. 23.1 as required to bring a derivative action in the absence of pre-suit demand.

On November 23, 2011, Plaintiff made an inspection demand upon the Board of Directors of Kid Brands pursuant to N.J.S.A. § 14A:5-28.  After inspecting Kid Brands' books

and records for over a year and a half, Plaintiff filed an Amended Complaint on June 28, 2013. Defendants now seek dismissal of the Amended Complaint.

## II.       Legal Standard

Kid Brands is a corporation incorporated in the state of New Jersey, so the substantive law to be applied in this matter governing internal corporate affairs is the law of New Jersey. *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005).  New Jersey has adopted Delaware's demand futility standard and New Jersey courts "generally follow Delaware's pronouncements on corporate law, and therefore 'an appropriate source of reference is the case law of Delaware.'" *In re Merck & Co. Sec., Derivative & ERISA Litig*., 493 F.3d 393, 399 (3d Cir. 2007); *Seidman v. Clifton Sav. Bank*, 2009 N.J. Super. Unpub. LEXIS 2267, at *9 n. 5 (N.J. Super. Ct. App. Div. Aug. 19, 2009) (citation omitted).

Defendants first seek dismissal of Plaintiff's Amended Complaint pursuant to Rule 23.1, which establishes pleading requirements for shareholder derivative complaints.  Fed. R. Civ. P. 23.1.  In order to commence a claim on behalf of a corporation, a shareholder must first demand that the board of directors cause the corporation to pursue the claim.  *King v. Baldino*, 409 Fed. Appx. 535, 537 (3d Cir. 2010).  Pleading requirements for a shareholder derivative action implicate a heightened pleading standard:

> The complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority, and if necessary, from the shareholders or members, and the reasons for plaintiff's failure to obtain the action or for not making the effort.

Fed. R. Civ. P. 23.1(b)(3); *see* N.J. R. 4:32-3.  Thus, a shareholder derivative complaint must either plead that such a pre-suit demand has been made or that such demand is excused because it would be "futile."  *In re PSE&G Shareholder Litig.*, 173 N.J. 258, 278-79 (2002).

Under New Jersey law, whether a plaintiff has adequately pled demand futility depends on whether a plaintiff has adequately plead with particularity:

> facts creating a reasonable doubt that: (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.

*PSE&G*, 173 N.J. at 282; *see also King*, 409 Fed. Appx. at 537 (quoting *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)).  Demand futility may be met under the first prong if incumbent directors "face a substantial likelihood of liability" that renders them "personally interested in the outcome of the decision on whether to pursue the claims asserted in the complaint."  *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 367 (Del. 2006).  Plaintiff bears the burden of establishing that demand was futile.  *PSE&G*, 173 N.J. at 287.

Defendants assert, in the alternative, that Plaintiff's Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal pursuant to Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

8

conclusions." *Iqbal*, 556 U.S. at 678.  Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id*.  Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.    Discussion

### Rule 23.1(b)(3)

The Court begins by reiterating the overarching principle that "the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). Plaintiff concedes that no demand on the Kid Brands Board was made regarding this matter.  (Am. Compl., ¶ 123).  However, Plaintiff once again argues that failure to make a pre-suit demand on the Board should be excused as futile on two grounds: 1) the Board was not disinterested or independent inasmuch as each member faces a "substantial likelihood of liability" because they failed to implement internal controls designed to ensure compliance with U.S. Customs laws and regulations on foreign payment practices, despite knowing that they each had a duty to do so; and 2) Defendants' alleged dissemination of false and misleading information violated their duty of candor and resulted in a breach of their respective fiduciary duties, making it impossible for them to consider a demand objectively.  (Pl. Opp'n Br. at 10, 26).

9

Defendants again contend that Plaintiff's amended pleading does not contain sufficiently particularized facts under Rule 23.1 for determining that demand would have been futile since: (1) Plaintiff fails to allege any new particularized facts that any Board member—much less a majority—knew that they were not discharging their fiduciary obligations in good faith, and (2) Plaintiff fails to allege any new facts that show that Defendants knew of misconduct at LaJobi but failed to disclose it.

The Court begins its Rule 23.1(b)(3) analysis by clarifying that Plaintiff's Amended Complaint alleges that each of the Defendants breached their respective fiduciary duties by: (1) allowing Kid Brands to engage in improper customs and payment practices, and (2) allowing Kid Brands to make improper statements in their public filings concerning its customs and payments practices.

## A.    Failure of Oversight Claim

### 1.    Applicable Law

Plaintiff's failure to monitor claim does not challenge a specific affirmative action or decision by the Kid Brands Board, so the Court must apply the demand futility test established by the Delaware Supreme Court in *Rales v. Blasband* regarding failure to act claims.  634 A.2d 927, 933-34 (Del. 1993).  In *Rales*, the court held that demand is excused in matters involving a failure to act where the complaint raises a reasonable doubt that a majority of the directors are disinterested or independent.  *Id.* at 930; *see also In re PSE&G*, 173 N.J. at 281-82 ("[T]he absence of board action . . . makes it impossible to perform the essential inquiry contemplated by *Aronson*, whether the directors have acted in conformity with the business judgment rule in approving the challenged transactions" (quoting *In re Prudential Ins. co. Derivative Litig.*, 659

A.2d 961, 975 (N.J. Super. Ct. Ch. Div. 1995)).  The *Rales* failure to act test involves a two-prong inquiry requiring courts to examine whether a complaint pleads particularized facts sufficient to demonstrate either:

> (1) the underlying conduct being challenged renders any of the directors 'interested' and, if so, whether any of the other directors are compromised in their ability to act independently of the interested directors; or (2) at least half of the directors face a sufficiently substantial threat of personal liability as to the conduct alleged in the complaint to compromise their ability to act impartially on a demand.

*Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007) (*citing Guttman v. Huang*, 823 A.2d 492, 501-3 (Del. Ch. 2003)).  Interest exists where a director will receive a personal financial benefit from a transaction or where a corporate decision will have a materially detrimental impact on a director, but not on the corporation or the stockholders, such as a substantial likelihood of liability if a demand is granted.  *Rales*, 634 A.2d at 936; *see Kanter v. Barella*, 489 F.3d 170, 178 (3d Cir. 2007).  The relevant test to establish significant likelihood of liability was clarified in *Guttman v. Huang*, which stated that a court must determine "whether the plaintiffs have plead facts that show [the] directors face a sufficiently substantial threat of personal liability to compromise their ability to act impartially on a demand."  823 A.2d 492, 503 (Del. Ch. 2003).  A director is independent where his decisionmaking is "based on the corporate merits of the subject before the board rather than extraneous considerations or influences" such as the control or influence of an interested director.  *Rales*, 634 A.2d at 936-37; *Aronson*, 473 A.2d at 816.  Under *PSE&G*, Plaintiff bears the burden of demonstrating demand futility. *PSE&G*, 173 N.J. at 287.

11

The case which most fully elucidates lack of oversight or failure to act pleading requirements in shareholder derivative actions is *In re Caremark Int'l, Inc. Derivative Litig*. 698 A.2d 959 (Del. Ch. 1996).   In *Caremark*, the Delaware Chancery Court stated that a lack of oversight claim "is possibly the most difficult theory in corporation law which a plaintiff might hope to win a judgment."  698 A.2d at 967.  *Caremark* clearly delineated a narrow range of actionable failure of oversight claims, finding that lack of good faith is a necessary condition to director liability, and, as stated above, "only a sustained or systematic failure of oversight . . . will establish the lack of good faith that is a necessary condition to liability."  *Caremark*, 698 A.2d at 971.  More specifically, to state a viable *Caremark* claim and predicate a substantial likelihood of director liability on it, "a plaintiff must plead the existence of facts suggesting that the board knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed."  *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007) (citing *Stone*, 911 A.2d at 373).  The scienter requirement in *Caremark* was also confirmed in *Stone ex rel. AmSouth Bancorporation v. Ritter*, which required a "showing that the directors knew that they were not discharging their fiduciary obligations," i.e.,  "a conscious disregard for their responsibilities."  911 A.2d 362, 370 (Del. 2006) (*citing Guttman*, 823 A.2d at 506).

Moreover, as clearly stated in this Court's October 24, 2011 Opinion, a plaintiff's pleadings based on a board's failure to act and in the absence of pre-suit demand must "differentiate among the directors and the other defendants" and "plead . . . facts showing that past directors had actual knowledge of the alleged wrongdoings at the time they were committed." *Prudential*, 282 N.J. Super. at 277.  With regard to scienter, "Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls

must have been deficient, and the board must have known so." *Desimone*, 924 A.2d at 940. Finally, plaintiffs "may not bootstrap allegations of futility merely by alleging that the directors participated in the challenged transaction or that they would be reluctant to sue themselves." *Prudential*, 282 N.J. Super. at 276.

### 2.     Analysis

The Court begins by reiterating its October 24, 2011 holding with respect to this claim, inasmuch as such holding is now law of the case:

> The Court will first consider whether Plaintiff has met its burden of establishing a reasonable doubt as to the Defendants' disinterestedness, focusing on Plaintiff's claim that Defendants' substantial likelihood of liability would have made demand on the Board futile. There is no doubt that the conduct of employees at Kid Brands' subsidiary, LaJobi, is under scrutiny for legal violations under U.S. Customs law and potentially under foreign laws in its jurisdictions of operation. Accepting Plaintiff's factual allegations as true, and relying on Defendants' voluntary disclosures in SEC filings, the Kid Brands Board must have been made aware of irregularities in customs duties payments on the part of LaJobi since at least December 2010 when the Company was notified that it was selected for a Focused Assessment by U.S. Customs. In its failure of oversight claim, the Complaint focuses exclusively on the months between December 2010 and March 2011 in documenting alleged breaches and misconduct on the part of the Board. The Complaint concedes that the Board did take actions to address the misconduct: it hired an outside law firm to set up an independent investigation, it established a Special Committee to conduct internal investigations, it took disciplinary actions by terminating the employment of top LaJobi officers, and publicly disclosed to shareholders and the public the nature of the misconduct and the extent of losses it suffered as a result of that misconduct. These actions are almost identical to those taken by the MedQuist, Inc. Board in *Kanter v. Barella*, responses which in that case the Third Circuit held to be appropriate and "appear to be precisely the types of actions an independent board exercising valid business judgment should take when made aware of a serious problem. By themselves they do not create reasonable doubt as to the validity of its judgment." 489 F.3d at 181.

13

To rebut the presumption that these actions by the Board are sufficient, however, Plaintiff's Complaint fails to plead with particularity any specific facts about deficiencies in internal monitoring mechanisms at Kid Brands and LaJobi, making only conclusory statements that, because violations of law occurred, "Defendants . . . did not have [Kid Brands] implement an internal controls system for compliance with U.S. Customs laws and the local foreign laws in the jurisdictions where [Kid Brands] operates," and that "Defendants' failures to implement internal controls at [Kid Brands'] overseas operations were conscious, and contrary to their duty." (Compl., at ¶ 52).

Further, Plaintiff fails to provide any facts beyond the occurrence of customs duties' violations that indicate a "sustained or systematic" failure of oversight. In evaluating such sustained or systematic failures under the *Caremark* standard, courts in this Circuit have looked to a series of indicators that point to an utter collapse of monitoring mechanisms. In *CCWIPP v. Alden*, the Delaware Chancery Court found that, since Plaintiff pled facts detailing only one concrete incident where it was possible to find that a company's policies were not followed, a sustained or systematic failure to monitor could not be shown, particularly since the complaint did not "describe how Defendants, as directors, interacted with [company] personnel, how much time they spent, or did not spend, overseeing the activities of [company] personnel, etc." 2006 Del. Ch. LEXIS 42, at •30-31 (Del. Ch., February 22, 2006). In *In re SFBC Int'l, Inc. Sec. & Deriv. Litig.*, a shareholder derivative suit arising from alleged mismanagement by a clinical testing, development and consulting company servicing pharmaceutical and medical device companies, the District of New Jersey found that demand was futile where the primary business of the company was "routinely conducted in an egregiously unethical manner," where violations were the company's "operating procedure" rather than "isolated or rare occurrences," and where "endemic mismanagement" was evidenced by the raising of "plenty of red flags concerning the improper and even possibly illegal practices in which the company was engaged." 495 F. Supp. 2d 477, 485 (D.N.J. 2007). The Court also found the misconduct was "related to the core of [the company's] business. . . . This was not merely decentralized activity by employees of a far-flung enterprise of the company, as was the case in Caremark." Id. at 485-86. The District of New Jersey also recently considered demand excuse in the context of subsidiaries' misconduct in a shareholder derivative claim based on an alleged substantial likelihood of liability of the Board. *In re Johnson & Johnson*

14

*Derivative Litigation*.  2011 U.S. Dist. LEXIS 112292 (D.N.J., Sept. 29, 2011).  In that case, plaintiffs based their *Caremark* claim on defendant directors'' alleged failure to prevent various illegal activities from occurring at several of the company's subsidiaries. *Id.,* at *1-2.  The red flags cited in that case were FDA warning letters, an FDA report, *qui tam* actions, a criminal plea, a settlement agreement with the U.S. Department of Justice ("DOJ"), and a DOJ subpoena, all alleged to point to corporate misconduct with respect to product recalls, off-label drug marketing and illegal kick-backs.  *Id.* at *7.  Despite the multitude of red flags, the court found that the plaintiffs' complaint could not link the reported information regarding subsidiaries' misconduct to the board of directors as required by the heightened pleading standard, namely, that particularized facts showed specifically the board's bad faith in consciously failing to prevent violations.  *Id*. at *28.

In this case, Plaintiff only alleges a single red flag alerting the Board of possible misconduct by LaJobi: the U.S. Customs decision to do a Focused Assessment of its subsidiary.   The Complaint itself concedes that the Board took a series of actions in response, deemed by law in this Circuit to demonstrate appropriate exercises of business judgment.   Unlike *SFBC*, the alleged violations of U.S. and foreign law are not asserted to be standard operating procedure or endemic to the larger operations of Kid Brands, nor are they pled to be at the core of Kid Brands' business rather than decentralized activity of employees in a distant subsidiary.   Even where many red flags are raised regarding subsidiary misconduct, a demand futility claim must fail where no relationship or link can be inferred from facts pled indicating that the board itself knew of the misconduct or inadequacies in internal control mechanisms, knew that illegal or harmful behavior could result from the inadequacies and consciously did nothing to control the deficiencies.

This brings the Court to a second fundamental point: Plaintiff does not present particularized facts regarding Defendants' actual knowledge of wrongdoing.  Specifically, the Complaint is devoid of factual allegations regarding who approved the incorrect payment of customs duties and whether any of the directors knew that the appropriate customs duties under federal anti-dumping law were not being paid.  Further, no facts are pled regarding any meetings that occurred between members of the Board and employees of LaJobi or those who knew of the misconduct of LaJobi employees where any misconduct was reviewed or discussed.  The Complaint also fails to plead facts that suggest an

inference that the directors or officers knew of the unpaid customs duties, and intended them to be a form of hidden bonus to be concealed from regulatory authorities and from Kid Brands' stockholders.  This Court thus cannot make a rational inference based on the facts pled that any members of the Kid Brands board, much less a majority, had actual knowledge about the violative activity of LaJobi's employees, and Plaintiff has failed to create a reasonable doubt as to the Kid Brands Board's ability to impartially consider a demand as to this claim.

Beyond Plaintiff's failure to sufficiently plead the Board's likely subjection to suit based on systematic failure to monitor and actual knowledge of misconduct, Plaintiff has also not set forth facts or circumstances demonstrating that a majority of the Board, or the sway of "interested" directors makes it such that the Board should be construed as personally interested in the outcome of the decision on whether to pursue the claims asserted in the Complaint.   Demand futility has been found in this Circuit regarding "interested" directors where: 1) directors benefitted through special compensation packages and grants of significant fees resulting from a merger with a company that had significantly overstated its income, *In re Cendant Corp. Deriv. Action Litig.*, 189 F.R.D. 117, 129 (D.N.J. 1999); and 2) half of the members of the Board of Directors were on a compensation committee which approved backdating options that benefitted those directors and an additional member accepted those options, *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007).  These cases indicate that interest can be found where directors have made decisions which directly mandate or approve wrongdoing, and where directors financially benefit from participation or approval in the challenged decision.  This is not the case here, and this Court thus has no basis to conclude that the majority of the Board were so invested in activities from which they benefitted that they could not exercise independent judgment regarding a shareholder's demand.

Plaintiff's Complaint fails to particularly plead: a) how the directors "interest" would prevent objective assessment of a demand request; and b) how each director, as differentiated from the others, has such an interest.   With regard to the first issue, the nature of the directors' interest,  Plaintiff makes two arguments. One argument, discussed above, is that at least half of the directors face a substantial likelihood of liability.   The other argument involves alleged financial benefits received from the alleged wrongdoing not shared by the shareholders.  Plaintiff's Complaint however only alleges that one member of the Board, Defendant

Crain, was so interested, receiving "$2.25 million in compensation, including stock options, while [Kid Brands] lacked internal controls for compliance with the U.S. Customs laws and the local foreign laws in the jurisdictions where [it] operations." (Compl., at ¶ 48). Plaintiff neither alleges how this compensation relates to the alleged misconduct of LaJobi's employees, nor addresses the influence of Defendant Crain on the rest of the Board with respect to how this financial interest would affect a decision on whether to grant a shareholder's demand.

The Complaint is deeply deficient with regard to the second issue requiring differentiation between Defendants under *Prudential*. The only descriptions of alleged activities by any individual member of the Board or Kid Brands officer is made in the "Parties" section of the Complaint, and the exclusive difference between Defendants listed is their job title and years of service. (See Compl., at ¶¶ 10-20). The rest of the alleged fact pertaining to each Defendant in their respective numbered paragraphs is identical regarding conclusory allegations of their knowledge "at all relevant times," that Kid Brands was subject to governing law, rules and regulations, that they failed to implement internal controls, and that they owed duties to the corporation which they breached in failing to oversee the company and making false statements to the SEC and Kid Brands' shareholders. The rest of the Complaint invariably refers to "KBI" (Kid Brands) and "the board of directors," providing no facts as to the degree of individual involvement, approval, participation, acquiescence or benefit from the alleged wrongdoing.

The central issue for the purposes of Plaintiff's motion is whether the Kid Brands Board "should be divested of its authority to address th[e alleged] misconduct" based on Plaintiff having overcome its burden of demonstrating reasonable doubt that the Board could exercise an independent and disinterested business judgment in responding to a demand of its claims. *Desimone*, 924 A.2d at 914. Since the factual allegations as pled do not show that a majority of the Board faces a substantial likelihood of liability under *Caremark* and subsequent binding law, fails to sufficiently allege actual knowledge of the directors or to differentiate between them regarding their participation in the wrongdoing, Plaintiff's Complaint falls short of the heightened pleading standard required to excuse demand.

Having carefully reviewed Plaintiff's Amended Complaint, the Court finds—for the reasons already set forth in its October 24, 2011 Opinion—that Plaintiff has again failed to plead that a pre-suit demand on the Board vis-à-vis its failure to monitor claim would have been futile. In particular, the Court finds as follows:

First, the Amended Complaint fails to allege that a majority of the Kid Brands' directors lacked independence such that demand should be excused. *See generally Rales,* 634 A.2d at 936 ("A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders. . . .  In such circumstances, a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision.").  At most, the Amended Complaint alleges that two out of the seven Board members were employed by Kid Brands.   *See* Am. Compl., ¶¶ 141 (alleging that Benaroya received $1.5 million in total compensation as CEO for Kid Brands); ¶ 142 (alleging that Crain received more than $2.25 million in compensation, including stock options, as CEO for Kid Brands).  Putting aside the issue of whether these two defendants were, in fact, members of the relevant board and/or whether their alleged employment occurred during the relevant time period, at most, the Amended Complaint alleges facts suggesting that two out of the seven members of the Board had a financial stake in Kid Brands.  Such allegations do not raise a reasonable doubt regarding the ability of a *majority* of the Board to properly exercise its business judgment in a decision on a demand had one been made.  *See Rales,* 634 A.2d at 937 ("[T]he appropriate inquiry is whether Blasband's amended complaint raises a reasonable doubt regarding the ability of a *majority* of the Board to exercise properly its business judgment in a decision on a demand had one been made at the time the action was filed.") (emphasis added).  Certainly, the facts alleged in the

Amended Complaint do not allow the Court to draw the reasonable inference that the majority of the Board were so invested in activities from which they benefitted that they could not exercise independent judgment regarding a shareholder's demand.

Second, the Amended Complaint fails to contain particularized facts as to each individual Defendant and fails to identify which individual Defendant breached his fiduciary duties and when those fiduciary duties were breached. *See King,* 409 Fed. Appx. at 538 (finding that plaintiff had failed to establish that the defendants faced a "substantial likelihood" of personal liability on his oversight claim where the complaint failed to contain "particularized facts" and did not "identify which individual director defendants breached his or her fiduciary duties, and when those duties were breached."); *Desimone,* 924 A.2d at 943 (holding that, in order to excuse demand based on an oversight theory of liability, "a derivative complaint must plead facts *specific to each director*, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand.").  Again, the only real descriptions of alleged activities by any individual member of the Board or Kid Brands officer is made in the "Parties" section of the Complaint, and the exclusive difference between Defendants listed is their job title and years of service.  *See* Am. Compl., ¶¶ 14-33.  The rest of the alleged facts pertaining to each Defendant is nearly identical—namely, that, "at all relevant times," each: (a) knew that Kid Brands: was subject to U.S. Customs rules and regulations and anti-dumping laws, needed to pay customs duties on goods imported from China and elsewhere, and needed to implement an internal controls system to ensure that Kid Brands met its payment obligations; (b) failed to implement such internal controls, despite having the duty to do so; and (c) as a result, Kid Brands substantially underpaid customs duties on goods imported into the United States by LaJobi.  The rest of the Amended Complaint, again, makes reference to "Kid Brands" and

"director defendants" without providing facts as to the degree of individual involvement, approval, participation, acquiescence or benefit from the alleged wrongdoing.

Third, the Amended Complaint fails to present particularized facts regarding Defendants' actual knowledge of wrongdoing.  In particular, the Amended Complaint continues to allege only one "red flag"—namely, the late December 2010 notification that LaJobi had been selected for a "Focused Assessment" by U.S. Customs.  There is no dispute that this "red flag" triggered immediate action by the Board.  The only question remaining was whether the Board had received any red flags concerning LaJobi's customs violations *prior* to December 2010 and consciously failed to take action.  *See, e.g., King*, 409 Fed. Appx. at 538-39 ("Without particularized facts that the directors knew or should have known about the misconduct and consciously failed to act, King cannot establish that the defendants face a 'substantial likelihood' of personal liability on his claims.").  Although the Amended Complaint now contains factual allegations concerning misconduct by LaJobi employees, the Amended Complaint contains no facts showing that any members of the Board were ever aware of such actions by LaJobi employees and consciously took no action. For example, although the Amended Complaint contains new facts surrounding discussions about customs violations between LaJobi employees dating as far back as 2007 (Am. Compl., ¶¶ 60-72), Plaintiff has failed to allege any facts linking the reported information regarding LaJobi's misconduct to any particular member of the Board. To be clear, although the Amended Complaint now contains specific facts to substantiate the allegation that LaJobi employees were aware of and intentionally engaged in customs violations "to avoid anti-dumping tarrif [sic]," (Am. Compl., ¶ 63), Plaintiff still fails to allege any facts linking said information to the Board itself, as required by the heightened pleading standard. Certainly, the Amended Complaint fails to contain particularized facts suggesting that the Board

had any reason to suspect (prior to December 2010) that the customs violations at LaJobi were occurring and/or that they *consciously* failed to take action in response.    Plaintiff's conclusory allegations that each of the defendants had knowledge that Kid Brands had a fiduciary duty to implement an internal controls system does not, without more, rise to the level of establishing that they knew they were not discharging this fiduciary obligation in good faith.  *See Desimone*, 924 A.2d at 940 ("[I]n order to state a viable *Caremark* claim, and to predicate a substantial likelihood of director liability on it, a plaintiff must plead the existence of facts suggesting that the board knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed.").

Fourth, although Plaintiff argues that demand upon the Board is not required because a majority of the current Board faces a substantial likelihood of liability for "utterly failing to implement any internal controls for compliance with U.S. Customs laws and foreign regulations," the allegations in the Amended Complaint do not support this.  *See Stone*, 911 A.2d at 370.  Rather, the allegations now pled confirm that certain internal customs-related controls were, in fact, in place.  *See* Am. Compl, ¶ 7 ("That investigation, as well as audits performed by Ernst & Young LLP ("E&Y") and KPMG LLP ("KPMG"), revealed that Kid Brands' internal controls during the time these customs and payment practices were deficient."); ¶ 38 (referring to the existence of an Audit Committee of the Board); ¶ 108 ("KPMG's report focused on financial aspects of those controls and determined that Kid Brands' internal controls were, at the very least, deficient. For example, the KPMG report issued to the Board and/or Audit Committee on, or around, March 31, 2011 stated that '[t]he controls associated with appropriate vendor set-up and the accounts payable 3-way match were not operating effectively' and that 'neither the

Company's entity-level controls, nor the preventive and detective process-level controls over inventory purchasing were sufficient to prevent or detect (and correct) this matter.' "); ¶ 109 ("the Board approved the retention of accounting firm E&Y, to 'help [Kid Brands] in assessing customs risks and controls and enhancing the effectiveness of processes that may have customs implications.' "); ¶¶ 110, 131 ("E&Y did note that, '[w]hile standard operating procedures exist for purchasing, importing foreign product and receiving, they do not sufficiently cover the relationship with customs brokers.' "); ¶ 132 ("KPMG reported on or around March 31, 2011, that '[t]he controls associated with appropriate vendor set-up and the accounts payable 3-way match were not operating effectively' "); *see Ash v. McCall,* 2000 WL 1370341, at *15 (Del. Ch. 2000) ("[T]he existence of an audit committee, together with HBOC's retention of Arthur Anderson as its outside auditor to conduct annual audits of the company's financial reporting, is some evidence that a monitoring and compliance system was in place at HBOC premerger.").

The fact that the foregoing internal oversight controls were—in *hindsight*—found to be deficient, is insufficient to establish likelihood of liability in a failure of oversight claim, particularly where the Amended Complaint fails to allege facts establishing that such deficiencies were the product of a conscious disregard by the board.  *See King v. Baldino*, 648 F. Supp. 2d 609, 623 (D. Del. 2009) ("It is not enough 'with the benefit of hindsight' that it is revealed that internal controls were inadequate and resulted in a large fine."), *aff'd*, 409 Fed. Appx. 535 (3d Cir. 2010); *Johnson v. Glassman*, 401 N.J. Super. 222, 233-45 (App. Div. 2008) (finding that "material weakness" in the company's internal controls, without more, did not establish likelihood of liability on failure of oversight claim where the complaint contained allegations that the board "had a functioning audit committee that responded appropriately when advised by the SEC that accounting and reporting violations might exist."); *see, e.g., Morefield v.*

*Bailey*, 2013 WL 4010295, at *14 (E.D. Va. 2013) ("The existence of deficiencies in the internal audit practice does not equate to the Board members being conscious of a failure to do their jobs.").  Moreover, Plaintiff bears the burden of establishing that demand was futile; thus, Plaintiff's attempt to use Kid Brands' alleged failure to produce documents confirming the existence of such internal controls to meet its *own* burden of affirmatively establishing Defendants' substantial likelihood of liability does not carry the day.  *See PSE&G*, 173 N.J. at 287.

Fifth, given the foregoing allegations confirming the existence of certain internal customs-related controls at Kid Brands, the Court also finds that Plaintiff has failed to allege "a sustained or systematic failure of the board to exercise oversight."  *Caremark*, 698 A.2d at 971 ("[A] sustained or systematic failure of the board to exercise oversight-such as an utter failure to attempt to assure a reasonable information and reporting system exists-will establish the lack of good faith that is a necessary condition to liability.").  To the extent Plaintiff argues that the customs violations at issue were not an isolated occurrence, but rather an ongoing and repeated problem throughout the Company's operations, again, the Amended Complaint contains no facts to suggest that any of the defendants were aware of such ongoing or systematic problems. Similarly, to the extent Plaintiff attempts to rely on allegations that the Board initiated similar investigations into Kid Brands' other subsidiaries – Kids Line, CoCaLo and Sassy—in 2012 (Am. Compl., ¶¶ 81-83) for the proposition that knowledge of illegal conduct can be inferred when the alleged wrongdoing is of substantial magnitude and duration, the Amended Complaint fails to allege any substantial overarching "scheme" that went undiscovered by the Board.  *See, e.g.,* Black's Law Dictionary 1462 (9th ed. 2009) (defining "scheme" as a "connected or orderly arrangement, esp. of related concepts").  Rather, *at most*, the Amended Complaint alleges that

the Board ultimately discovered customs-related problems at LaJobi and the other subsidiaries (Kids Line, CoCaLo and Sassy), but that both were caused by different, unrelated factors. *Compare* Am. Compl., ¶ 83 (concluding that customs-related problems at Kids Line, CoCaLo and/or Sassy did not result from intentional misconduct of the subsidiaries' personnel) *with* Am. Compl., ¶ 79 (explaining that "the Board concluded that there was misconduct involved on the part of certain LaJobi employees in connection with the incorrect payment of duties, including misidentifying the manufacturer and shipper of products").   Moreover, as previously stated, the Amended Complaint fails to allege any particular red flags from which it may be reasonably inferred that any particular member of the Board knew of any systematic customs-related problems and chose to disregard it. *See, e.g., In re Abbott Labs. Derivative S'holders Litig.,* 325 F.3d 795, 809 (7th Cir. 2003) (finding that plaintiff had properly alleged demand futility, despite the lack of evidence that any of the directors *knew* of the violations of law, given the "extensive paper trail" concerning the violations); *In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 460 (S.D.N.Y. 2010) (finding that plaintiff had properly alleged demand futility where "the Complaint details at great length a large number of reports made to members of the board from which it may reasonably be inferred that they all knew of Pfizer's continued misconduct and chose to disregard it.").   Absent any such red flags and/or any particular facts linking the internal customs-related oversight problems at LaJobi with those found at the other subsidiaries, the Court concludes that Plaintiff has failed to meet its burden of pleading demand futility based on a theory that the failure involves a **scheme** of significant magnitude and duration.   *See, e.g., Abbott,* 325 F.3d at 809 ("We find that six years of noncompliance, inspections, 483s, Warning Letters, and notice in the press, all of which then resulted in the largest civil fine ever imposed by the FDA and the destruction and suspension of products which accounted for approximately

24

$250 million in corporate assets, indicate that the directors' decision to not act was not made in good faith and was contrary to the best interests of the company.").

Simply put, "[w]ithout particularized facts that the directors knew or should have known about the misconduct and consciously failed to act," Plaintiff cannot establish that the Defendants face a "substantial likelihood" of personal liability as to the breach of fiduciary duty claims asserted. *King*, 409 Fed. Appx. at 539; *Stone*, 911 A.2d at 370 ("[I]mposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations. Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith."). Thus, once again, the Court cannot make the rational inference based on the facts pled that any members of the Kid Brands Board, much less a majority: (a) had actual knowledge about the violative activity of LaJobi's employees and consciously chose to do nothing about it, or (b) lacked good faith in the exercise of their monitoring responsibilities. *See Caremark,* 698 A.2d at 972. Plaintiff's Amended Complaint thus falls short of the heightened pleading standard required to excuse demand as to its failure to monitor claim.

### B.    Disclosure Claim: Alleged False and Misleading Statements

The second aspect of Plaintiff's breach of fiduciary duty claim alleges that the Board issued false and misleading statements about LaJobi in various corporate disclosures.[1]

---

[1] Plaintiff does not allege a request for shareholder action in this case; thus, Plaintiff's disclosure claim must be assessed as a duty of loyalty claim. *See Steinman v. Levine*, 2002 WL 31761252, at *13 (Del.Ch. Nov. 27, 2002) ("The Delaware Supreme Court has held that claims for a breach

Defendants again argue that Plaintiff does not plead with particularity substantial likelihood of liability with respect to the misstatement claim so as to excuse Plaintiff's failure to make pre-suit demand.   Unlike Plaintiff's lack of monitoring claim, the alleged misstatements to the SEC constituted an affirmative action by the Board rather than a failure to act, so Plaintiff may satisfy demand futility by pleading facts creating a reasonable doubt that either (1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.  *PSE& G*, 173 N.J. at 282.

Establishing demand futility under the second prong involves a "heavy burden" on the part of a plaintiff since that prong is "directed to extreme cases in which despite the appearance of independence and disinterest a decision is so extreme or curious as to itself raise a legitimate ground to justify further inquiry and judicial review." *Highland Legacy Ltd. v. Singer,* No. Civ. A. 1566-N, 2006 Del. Ch. LEXIS 55, at *29-30 (Del. Ch. Mar. 17, 2006).   The business judgment rule is a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Smurfit-Stone Container Corp. S'holder Litig.*, 2011 Del. Ch. LEXIS 79, at *41 (Del. Ch. May 20, 2011).   Where a majority of the directors are independent or outside directors, the business judgment rule's presumption of good faith is heightened.  *Hokanson v. Petty*, 2008 Del. Ch. LEXIS 182, at *25 n. 34 (Del. Ch. Dec. 10, 2008).

In dismissing this claim without prejudice, the Court held:

of fiduciary duty of disclosure can only arise when the defendant has made statements to the corporation's stockholders in connection with a request for stockholder action."), *aff'd*, 822 A.2d 397; *Jackson Nat'l Life Ins. Co.*, 741 A.2d at 389 (noting that "in the absence of a request for stockholder action, a duty of loyalty claim requires well pleaded allegations that directors "deliberately misinform[ed] stockholders through the dissemination of false information").

> This Court agrees that Plaintiff has failed to create reasonable doubt as to the Board's disinterestedness, independence, and valid business judgment for the purposes of excusing demand on its disclosure claims. Plaintiff's Complaint does not allege any facts at all regarding the Board's knowledge of any wrongdoing by LaJobi until December 2010, when the company's subsidiary was targeted for a Focused Assessment. The only facts alleged in the Complaint even dealing with the period surrounding the relevant SEC disclosures by Kid Brands, all prior to December 2010, are the filing of the disclosures themselves. Thus, Plaintiff allegations that Defendants knew of misconduct but failed to disclose it is entirely conclusory, and Plaintiff has not met the required heightened pleading standard that either Defendants face a substantial likelihood of liability to make demand futile or that they failed to exercise valid business judgment in making the disclosures that they made.

(October 24, 2011 Op. at 19-20).

Based on the reasons already stated in the Court's October 24, 2013 Opinion, and those set forth below, the Court finds that the Amended Complaint fails to cure the pleading deficiencies discussed above. In particular, the Amended Complaint takes issue with four disclosures: (1) the March 15, 2011 SEC Form 8-K (which disclosed that there were "instances at LaJobi in which incorrect import duties were applied on certain wooden furniture imported from vendors in China, resulting in a violation of anti-dumping regulations.") (Am. Compl., ¶ 2); (2) the March 31, 2011 SEC Form 10-K (which revealed that Kid Brands owes approximately $7 million in customs duty to U.S. Customs and could face a penalty of up to 100% of that customs duty) (Am. Compl., ¶ 3); (3) Kid Brands' Annual Report for fiscal year 2009 (stating that "The Borrowers [defined to include Kid Brands] were in compliance with all applicable financial covenants in the Credit Agreement as of December 31, 2009.") (Am. Compl., ¶ 119); and (4) Kid Brands' November 3, 2010 Quarterly Report on SEC Form 10-Q (which stated that the purpose of L&J was to provide quality control services to LaJobi for goods being shipped from Asian

ports and that L&J pays for the actual cost of such services and is subsequently reimbursed by Kid Brands) (Am. Compl., ¶ 117).

Starting with the November 3, 2010 Quarterly Report on SEC Form 10-Q, Plaintiff alleges that "the statements described above regarding Kid Brands' payment practices for quality control services were false and misleading because those payments were not made to L&J Industries and were not made to L&J Industries for actual, direct costs incurred by that entity.  In reality, Kid Brands made these payments directly to the individuals providing quality control services, in likely violation of laws in the foreign jurisdictions in which those individuals reside." (Am. Compl., ¶ 118).  Such allegations do not establish a substantial likelihood of liability for improper disclosure because the Amended Complaint once again contains no allegations that would allow the Court to draw the rational inference that any members of the Board knew such statements were false when made.  *See Pfeffer v. Redstone*, 965 A.2d 676, 686 (Del. 2009) (finding that, if the directors did not know or have reason to know the allegedly missing facts, then they could not be in a position to disclose them); *Kanter*, 489 F.3d at 180 (finding that plaintiff failed to create a reasonable doubt as to the directors's disinterestedness where the complaint did not "allege specific actions by any of the defendants, nor does it assert knowledge of alleged wrongdoings. The District Court found these conclusory allegations insufficient to satisfy the heightened pleading requirements of Rule 23.1."); *Jackson,* 741 A.2d at 389 ("[I]n the absence of a request for stockholder action," a duty of loyalty claim requires well pleaded allegations that directors "deliberately misinform[ed] stockholders through the dissemination of false information").

Similarly, Plaintiff argues that the statement contained in Kid Brands' annual report for fiscal year 2009 stating that Kid Brands was in compliance with all applicable financial

covenants in the Credit Agreement as of December 31, 2009 was false and misleading when made given the Director Defendants' subsequent admission that Kid Brands' customs and payments practices breached warranties and covenants in the Credit Agreement.   But such allegations do not establish a substantial likelihood of liability for failure to disclose because the Amended Complaint contains no allegations that would allow the Court to draw the reasonable inference that any members of the Board knew such statement was false when it was made.   *See Pfeffer,* 965 A.2d at 686; *Kanter*, 489 F.3d at 180; *Jackson,* 741 A.2d at 389.

As to the last two disclosures at issue—the March 15, 2011 SEC Form 8-K and the March 31, 2011 SEC Form 10-K—Plaintiff attempts to use the fact that the Director Defendants waited three months after receiving the December 2010 U.S. Customs notification regarding the Focused Assessment of LaJobi before disclosing same (in mid-March 2011) as establishing a viable *Caremark* claim.   Even assuming, *arguendo*, that the Board had an obligation to disclose to its shareholders the Focused Assessment or the preliminary findings of its internal investigation concerning customs-related misconduct at LaJobi,[2] Plaintiff has failed to plead that the Director Defendants took no action during said three month period.   *See Desimone,* 924 A.2d at 940 (holding that to state a viable *Caremark* claim and predicate a substantial likelihood of director liability on it, "a plaintiff must plead the existence of facts suggesting that the board knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed.").   To the contrary, allegations in the Amended Complaint

---

[2] *See, e.g., Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998) ("In the absence of a request for stockholder action, the Delaware General Corporation Law does not require directors to provide shareholders with information concerning the finances or affairs of the corporation.").

show that once the Board received notification of the Focused Assessment, they took prompt steps to conduct their own due diligence.  For instance, the Amended Complaint—like the original complaint—concedes that the Board did take actions to address the alleged misconduct at LaJobi: it hired an outside law firm to set up an independent investigation, it established a Special Committee to conduct internal investigations, it retained the services of Ernst & Young and KPMG to conduct audits of Kid Brands' internal controls, it took disciplinary actions by terminating the employment of top LaJobi officers, and publicly disclosed to shareholders and the public the nature of the misconduct and the extent of losses it suffered as a result of that misconduct. *See*, e.g., Am. Compl., ¶¶ 2, 3, 7, 8, 78, 79.   This Court has already held that such actions are almost identical to those taken by the MedQuist, Inc. Board in *Kanter v. Barella*, responses which in that case the Third Circuit held to be appropriate and "appear to be precisely the types of actions an independent board exercising valid business judgment should take when made aware of a serious problem.  By themselves they do not create reasonable doubt as to the validity of its judgment." 489 F.3d at 181.

Thus, Plaintiff has once again failed to meet the heightened pleading standard for establishing demand futility on its disclosure claim by creating a reasonable doubt that the Board either lacked independence or exercised valid business judgment in making the disclosures that they made.  To the extent Plaintiff has attempted to paint its disclosure claim as fitting under *Caremark*, Plaintiff has failed to establish likelihood of liability on any such claim inasmuch as the Amended Complaint contains no particular facts showing the existence of red flags that should have alerted the Board to the problems at LaJobi prior to December 2010, or facts suggesting that Defendants consciously chose to do nothing between the one and only red flag

referenced in the Amended Complaint (the mid-December 2010 Focused Assessment notification) and the Board's first disclosure concerning same (in mid-March 2011).

### C.       Remaining Claims

Because all remaining claims—gross mismanagement, corporate waste and unjust enrichment—indisputably flow from Defendants' alleged breach of their fiduciary duties,[3] the Court concludes that such claims must also be dismissed pursuant to Rule 23.1 for failure to adequately plead particularized facts regarding Defendants' alleged breach of their fiduciary duties; demand is thus not excused as to these claims. *See, e.g., In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 342 (S.D.N.Y. 2010) ("Plaintiffs have not pled particular facts creating a reasonable doubt that the majority of the board (even excluding Lewis) who were not members of that committee could have exercised their disinterested and independent business judgment in considering a demand to file suit.  Demand for the unjust enrichment claim, therefore, is not excused.").

### Rule 12(b)(6)

Even assuming, *arguendo*, that Plaintiff had met the heightened pleading standard for establishing demand futility pursuant to Rule 23.1(b)(3), based on the reasons that follow, the

---

[3] *See* Am. Compl., ¶ 162 (alleging claim of gross mismanagement based on Defendants having "abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Kid Brands"); ¶ 166 (alleging claim of corporate waste based on "misconduct described above" in connection with breach of fiduciary duty claim); ¶ 170 (alleging claim of unjust enrichment based on "misconduct particularized" in the context of breach of fiduciary duty claim).

Court finds that dismissal of all claims asserted in the Amended Complaint would nevertheless be warranted pursuant to Rule 12(b)(6).

### A.      Breach of Fiduciary Duty

Count One of the Amended Complaint alleges that Defendants breached their fiduciary duties by: (1) "causing or allowing the Company to engage in improper customs and payment practices," and (2) by "making, or allowing the Company to make, improper statements in their public filings concerning its customs and payments practices." (Am. Compl., ¶¶ 157).   Thus, Plaintiff's breach of fiduciary claim has two components: (1) lack of oversight, and (2) improper disclosure (or failure to disclose).

As previously stated, Plaintiff's lack of oversight claim is governed by *Caremark*. 698 A.2d at 971.   To state a viable *Caremark* claim, "a plaintiff must plead the existence of facts suggesting that the board knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed."   *Desimone*, 924 A.2d at 940. The scienter requirement in *Caremark* was also confirmed in *Stone ex rel. AmSouth Bancorporation v. Ritter*, which required a "showing that the directors knew that they were not discharging their fiduciary duties" and "suggesting a conscious decision to take no action in response to red flags" of wrongdoing within the company.   911 A.2d at 370 (citation omitted).   Thus, it is clear that in order to state a lack of oversight claim that is plausible on its face, Plaintiff must allege, at a minimum, facts "showing that the directors were conscious of the fact that they were not doing their jobs." *Guttman*, 823 A.2d at 506.   Plaintiff's Amended Complaint fails to do this.

In particular, as previously stated, the Amended Complaint continues to allege only one red flag—namely, the late December 2010 notification that LaJobi had been selected for a

32

"Focused Assessment" by U.S. Customs.   There is no dispute that this red flag triggered immediate action by the Board.   Although the Amended Complaint now contains factual allegations concerning misconduct by LaJobi employees, the Amended Complaint contains no facts showing that any members of the Board were ever aware of such actions by LaJobi employees—*prior* to December 2010—and consciously took no action.   For example, although the Amended Complaint contains new facts surrounding discussions about customs violations between LaJobi employees dating as far back as 2007 (Am. Compl., ¶¶ 60-72), Plaintiff has failed to allege any facts linking the reported information regarding LaJobi's misconduct to any particular member of the Board.   Nor has Plaintiff alleged facts showing a "sustained of systematic failure of the board to exercise oversight." *Caremark*, 698 A.2d at 971.   Rather, the allegations now pled in the Amended Complaint confirm that certain internal customs-related controls were, in fact, in place.   *See* Am. Compl, ¶¶ 7, 38, 108, 109, 110, 131, 132.   The fact that the foregoing internal oversight controls were—in *hindsight*—found to be deficient, is insufficient to allege a viable failure of oversight claim, particularly where the Amended Complaint fails to allege facts establishing that such deficiencies were the product of a conscious disregard by the board.   *See Guttman,* 823 A.2d at 506 ("[T]he [*Caremark*] decision premises liability on a showing that the directors were conscious of the fact that they were not doing their jobs.").

The disclosure aspect of Plaintiff's breach of fiduciary duty claim is equally deficient. "[D]irectors who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances." *Malone*, 722 A.2d at 9; *see also Jackson,* 741 A.2d at 389 ("[I]n the absence of a request for stockholder action," a duty of loyalty claim requires

well pleaded allegations that directors "deliberately misinform[ed] stockholders through the dissemination of false information."). As previously held, the Amended Complaint contains no allegations that would allow the Court to draw the rational inference that any members of the Board *knew* statements they made (concerning Kid Brands' payment practices and/or compliance with all applicable financial covenants in the Credit Agreement) in the November 3, 2010 Quarterly Report on SEC Form 10-Q or the Kid Brands' annual report for fiscal year 2009 were false when made. Absent such factual content, Plaintiff has failed to plead an improper disclosure claim that is plausible on its face. *See Pfeffer,* 965 A.2d at 686 (finding that, if the directors did not know or have reason to know the allegedly missing facts, then they could not be in a position to disclose them); *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) ("The Board's execution of MME's financial reports, without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality."); *Guttman*, 823 A.2d at 498 (dismissing complaint that was "devoid of any pleading regarding the full board's involvement in the preparation and approval of the company's financial statements" and of "particularized allegations of fact demonstrating that the outside directors had actual or constructive notice of the accounting improprieties.")

Finally, to the extent Plaintiff attempts to use the fact that the Director Defendants waited three months after receiving the December 2010 U.S. Customs notification regarding the Focused Assessment of LaJobi before disclosing same in Kid Brands' March 15, 2011 SEC Form 8-K and the March 31, 2011 SEC Form 10-K as establishing a viable *Caremark* claim, such claim is deficient as a matter of law inasmuch as Plaintiff has failed to plead that the Director Defendants took no action during said three month period. *See Desimone,* 924 A.2d at 940 (holding that to state a viable *Caremark* claim, "a plaintiff must plead the existence of facts

suggesting that the board knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed."). To the contrary, allegations in the Amended Complaint show that once the Board received notification of the Focused Assessment, they took prompt steps to conduct their own due diligence. *See, e.g.*, Am. Compl., ¶¶ 2, 3, 7, 8, 78, 79.

Plaintiff has thus failed to plead a facially plausible claim of breach of fiduciary duty premised on either failure to monitor or improper disclosure. Having previously dismissed this claim and having given Plaintiff ample opportunity to cure the pleading deficiencies therein, Count One is now dismissed with prejudice.

### B.      Gross Mismanagement

Count Two of the Amended Complaint alleges a claim of gross mismanagement based on Kid Brands' alleged failure to operate without necessary internal controls. As this Court noted in its October 2011 Opinion, "Delaware law does not recognize an independent cause of action against corporate directors and officers for reckless and gross mismanagement; such claims are treated as claims for breach of fiduciary duty." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 115 n. 6 (Del. Ch. 2009). Plaintiff does not expressly dispute this.[4] Thus, the Amended Complaint fails to state a viable claim of gross mismanagement against the Director Defendants. This claim is now dismissed with prejudice.

### C.      Corporate Waste

Count Three of the Amended Complaint alleges a claim of corporate waste based on

---

[4] All cases cited to by the Plaintiff in opposition to dismissal of this claim pre-date the *Citigroup* decision.

Defendants causing millions of dollars' worth of damages to Kid Brands by underpaying customs duties and failing to cause Kid Brands to implement internal controls.  In particular, Plaintiff argues that it has stated a viable claim of corporate waste based upon Kid Brands' receipt of "insufficient consideration for harm done to the Company (*i.e.,* the costs associated with fines and investigations) resulting from Defendants' fiduciary failure." (Pl. Opp'n Br. at 39).

"[A] waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997).  "Most often the claim is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received. Such a transfer is in effect a gift." *Id*.  Thus, "'[d]irectors are guilty of corporate waste, only when they authorize an exchange that is so one-sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.'" *Seidman v. Clifton Sav. Bank, S.L.A.,* 205 N.J. 150, 167 (2011) (quoting *Glazer v. Zapata Corp*., 658 A.2d 176, 183 (Del. Ch. 1993)); *see generally Highland Legacy Ltd. v. Singer,* C.A.  No. 1566–N, 2006 WL 741939, at *7 (Del. Ch. Mar. 17, 2006) ("To excuse demand on the grounds of waste, the complaint must allege particularized facts sufficient to create a reasonable doubt that the board authorized action on the corporation's behalf on terms that no person of ordinary, sound business judgment could conclude represents a fair exchange.").

The Court concludes that Plaintiff has failed to state a facially plausible claim of corporate waste for two reasons.  First, it is premised entirely on Defendants' alleged breach of their fiduciary duties.  Having determined that Plaintiff has failed to allege sufficient facts which

would allow the Court to draw the reasonable inference that Defendants face a substantial likelihood of liability on the breach of fiduciary duty claims, the Court finds that Plaintiff similarly fails to allege a plausible claim of waste. *See, e.g., Sample v. Morgan*, 914 A.2d 647, 669 -670 (Del. Ch. 2007) ("Claims of waste are sometimes misunderstood as being founded on something other than a breach of fiduciary duty. Conceived more realistically, the doctrine of waste is a residual protection for stockholders that polices the outer boundaries of the broad field of discretion afforded directors by the business judgment rule.").

The Amended Complaint also fails to allege a facially plausible claim of waste inasmuch as the crux of this claim—in Plaintiff's own words—is that Kid Brands received insufficient consideration for the amount of money it was required to spend in connection with the customs-related fines and investigations. *See* Pl. Opp'n Br. at 39. According to the Amended Complaint, this substantial expense was caused by the Board's *inaction*—namely, the Board's failure to adequately monitor LaJobi's compliance with relevant laws and regulations governing its domestic and overseas operations. *See* Am. Compl., ¶¶ 45, 90, 124, 159. But a claim of waste requires some type of "*board authorized action on the corporation's behalf* on terms that no person of ordinary, sound business judgment could conclude represents a fair exchange." *Citigroup*, 964 A.2d at 135 n. 96 (emphasis in original) (quoting *Highland,* 2006 WL 741939, at *7). Because Plaintiff's claim of waste is indisputably based upon the Board's alleged inaction rather than any particular "board authorized action," the Court finds that Plaintiff has failed to state a claim of corporate waste that is plausible on its face. Having already dismissed this claim in October 2011, and having already afforded Plaintiff with an opportunity to engage in limited discovery and to cure the pleading deficiencies in this claim, the Court's dismissal in this regard is with prejudice.

### D.     Unjust Enrichment

Count Four of Plaintiff's Amended Complaint alleges a claim of unjust enrichment.  In particular, Count Four alleges that "as a result of the misconduct particularized herein, defendants have been unjustly enriched at the expense of and to the detriment of Kid Brands, in the form of unjustified salaries, benefits, bonuses and other emoluments of office."

Under Delaware law, unjust enrichment is the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Fleer Corp. v. Topps Chewing Gum, Inc.,* 539 A.2d 1060, 1062 (Del. 1988).

The Court finds that Plaintiff has failed to state a facially plausible claim of unjust enrichment because the Amended Complaint is devoid of any allegations that any—much less all—of the Defendants benefitted from the unlawful conduct alleged.  For instance, Plaintiff does not allege that the salaries, benefits, bonuses or "other emoluments of office" the Director Defendants received were tied to their alleged breaches of fiduciary duties—namely, their alleged failure to monitor LaJobi's compliance with relevant laws and regulations governing its domestic and overseas operations and/or their alleged improper disclosures (or failure to disclose).  *See, e.g., Schock v. Nash,* 732 A.2d 217, 231-232 (Del. 1999) ("The trial court correctly found that all the Schocks were unjustly enriched and ordered them to return any assets in their possession *that were traceable to* Irma Schock's breaches of fiduciary duty.") (emphasis added).  Because Plaintiff has failed to allege facts showing why it would be unfair or inequitable to allow the Director Defendants to retain their "salaries, benefits, bonuses or 'other emoluments of office,'" Plaintiff's claim for unjust enrichment is dismissed for failure to state a claim.

38

The Court notes that Plaintiff's brief in opposition to Defendants' motions to dismiss argues that "these benefits [salaries, benefits, bonuses] . . . were unwarranted in light of the fact that had Defendants disclosed their failure to implement internal controls at Kid Brands' subsidiaries, they most likely would not have retained their positions and continued to receive those benefits." (Pl. Opp'n Br. at 40).  Although a complaint cannot be amended by way of a brief filed in opposition to a motion to dismiss,[5] even if the Court were to consider this statement, it is based on pure speculation and is entirely conclusory; thus, it would not benefit from the presumption of truth on a motion to dismiss.  Moreover, the Court has already concluded—twice—that the actions taken by the Board after receiving the one and only red flag alleged in the Amended Complaint were precisely the types of actions an independent board exercising valid business judgment should take when made aware of a serious problem.[6]

Having already dismissed this claim on this basis in October 2011, and having afforded Plaintiff with over eighteen months in which to inspect Defendants' books and records so as to buttress its insufficient allegations, **t**he Court finds that any future amendment of this claim—as with all claims asserted in the Amended Complaint—would be futile.  Count Four of Plaintiff's Amended Complaint is hereby dismissed with prejudice. *See, e.g., In re Bank of Am.*, 757 F.

---

[5] *See Com. of Pa. ex rel v. Zimmerman v. Pepsico*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

[6] Such actions include: hiring an outside law firm to set up an independent investigation, establishing a Special Committee to conduct internal investigations, retaining the services of Ernst & Young and KPMG to conduct audits of Kid Brands' internal controls, taking disciplinary actions by terminating the employment of top LaJobi officers, and publicly disclosing to shareholders and the public the nature of the misconduct and the extent of losses it suffered as a result of that misconduct once it had engaged in three months' worth of its own due diligence. *See*, *e.g.,* Am. Compl., ¶¶ 2, 3, 7, 8, 78, 79.

Supp. 2d at 342 (dismissing a claim for unjust enrichment where plaintiffs did not allege director benefit from unlawful conduct in their derivative complaint).

## V.  Conclusion

For these reasons, this Court finds that Plaintiff has once again failed to satisfy the pleading requirements of Fed. R. Civ. P. 23.1 as required to bring a derivative action in the absence of a pre-suit demand.[7]  On this basis, Defendants' Motions to Dismiss is **granted**.[8] Having previously dismissed all claims asserted in the Amended Complaint, and having afforded Plaintiff with over eighteen months in which to inspect Defendants' books and records so as to buttress its insufficient allegations, the Court finds that any future amendment of the claims asserted in the Amended Complaint would be futile.  Plaintiff's Amended Complaint is thus dismissed in its entirety *with* prejudice.  This case is hereby **closed**.

An appropriate Order accompanies this Opinion.


                                                    s/ Jose L. Linares____
                                                    Jose L. Linares
Date:   September 25, 2013                          United States District Judge

_____

[7] Since the Court finds that Plaintiff has failed to meet the pleading standard required to bring a shareholder derivative claim—namely, that Defendants face a substantial likelihood of liability on the breach of fiduciary duty claims—the Court need not consider whether the exculpatory provision of Kid Brands' certificate of incorporation exonerates the Director Defendants from liability as to this claim.

[8] In the alternative, the Court has concluded that dismissal of all claims asserted in the Amended Complaint would also be warranted pursuant to Rule 12(b)(6).